[Cite as *Hilbert v. Ohio Dept. of Transp.*, 2017-Ohio-488.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Thomas Hilbert, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 16AP-205 |
| | | (Ct. of Cl. No. 2015-00020) |
| Ohio Department of Transportation, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 9, 2017

**On brief:** *Law Office of John H. Forg*, and *John H. Forg, III*, for appellant. **Argued:** *John H. Forg, III*.

**On brief:** *Michael DeWine*, Attorney General, *Peter E. DeMarco* and *Timothy M. Miller*, for appellee. **Argued:** *Timothy M. Miller*.

APPEAL from the Court of Claims of Ohio

TYACK, P.J.

{¶ 1} Plaintiff-appellant, Thomas Hilbert, is appealing from the judgment granted in favor of the state in his lawsuit in the Court of Claims of Ohio. For the reasons that follow, we reverse the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Hilbert began working for the Ohio Department of Transportation ("ODOT") in 1993 as a highway maintenance worker, and was eventually promoted to Signal Electrician 2. At all times, Hilbert was a member of the Ohio Civil Service Employees Association ("OCSEA"), the union governing ODOT employees. Hilbert obtained a Class A commercial driver's license during his probationary period and regularly drove dump trucks which required Class A certification. Later, he was also required to maintain a Class A certification in his position as a Signal Electrician 2.

However, as a Signal Electrician 2, Hilbert was not regularly required to drive any equipment requiring a Class A certification. Instead, he drove a bucket truck and serviced traffic lights that were malfunctioning. A commercial driver's license is not required to drive a bucket truck. It is undisputed that Hilbert did not actually drive any equipment that required Class A certification while working as a Signal Electrician 2, and Hilbert's supervisors could not identify any specific job duty of a Signal Electrician 2 that Hilbert needed a commercial driver's license to perform. [1]

{¶ 3} Hilbert was a diligent and hard-working employee who got along well with his co-workers, whose work was always deemed satisfactory, who never received a negative evaluation, and, until the events at issue in this case, never received a reprimand or discipline.

{¶ 4} On August 16, 2013, while returning from a concert, Hilbert was arrested and charged with the offense of operating a motor vehicle while impaired. He refused a breath test which resulted in an immediate suspension of his Ohio driver's license.

{¶ 5} The next day, a Saturday, Hilbert contacted Jim Judd, his supervisor, and explained what had happened the night before. After consultation with Amy Augsparger, the safety director, Hilbert was advised to take personal leave until the matter was resolved.

{¶ 6} The following Monday after Hilbert received his citation, Jim Judd and Mike Brown, the labor relations officer, called Hilbert, and Brown informed Hilbert that he needed a commercial driver's license for his job because the union contract mandated it. Hilbert informed them that he was going to retain counsel and attempt to get his driving privileges restored.

{¶ 7} On September 4, 2013, Hilbert appeared in court and pled guilty to a lesser charge of reckless operation of a motor vehicle. The judge who heard the case terminated the administrative license suspension flowing from the refusal to take a breath test but placed a different six-month suspension on Hilbert's driving privileges. Under the new driving suspension, Hilbert had work-related privileges and was allowed to drive to and from work, and while at work, 24 hours a day, since Hilbert could be required to drive for

---

[1] Effective December 29, 2013, ODOT eliminated the requirement that a Signal Electrician 1 or 2 must maintain a Class A commercial driver's license.

road emergencies. The judge did not restrict Hilbert's ability to drive vehicles requiring a commercial driver's license certification, but the sentencing documents do not contain a specific reference to Hilbert's commercial driver's license.

{¶ 8} The next day, Hilbert contacted Jim Judd, his supervisor, Jim Fife, the human resources manager, and Michael Brown, assistant personnel director and labor relations officer, and reported the reduction of his charges, the termination of his administrative license suspension, and his ability to return to work without any restrictions on his driving. Although Hilbert asked these managers to return to active duty, he received no response.

{¶ 9} Hilbert had recently gone through a divorce and a foreclosure, and these events had caused him to seek treatment from his family physician for stress and anxiety. Shortly after receiving his traffic citation, Hilbert again contacted his family physician who suggested that Hilbert take leave under the Family Medical Leave Act ("FMLA") for three months to obtain treatment. Hilbert had a family history of alcoholism, and he was amenable to seeking help. Through the employee assistance program ("EAP") offered by the state, he met with two separate medical professionals who diagnosed him as showing signs of alcoholism. Hilbert began searching for a rehabilitation program.

{¶ 10} On September 12, 2013, Hilbert contacted Shananne Middleton, the benefits administrator, and requested leave from his job under FMLA. Middleton contacted Jim Fife, the human resources administrator, and Michael Brown, the labor relations officer, by means of a conference call in which Hilbert repeated his request for FMLA leave. Middleton prepared the necessary paperwork which she gave to a co-worker to deliver to Hilbert that same day.

{¶ 11} On September 19, 2013, Hilbert submitted a medical certification form to his family physician. The doctor faxed the completed form back to Hilbert on September 24, 2013, and Hilbert emailed the completed form to the human resources department.

{¶ 12} Meanwhile, on September 20, 2013, Hilbert's supervisor, Judd, contacted Hilbert and arranged for Hilbert to meet with Judd and Michael Brown, the labor relations officer. The three met at a gas station near Hilbert's home, and Brown attempted to persuade Hilbert to resign. Hilbert refused. Brown sent a letter that day to

Hilbert, notifying him that ODOT was considering terminating his employment, and that a pre-disciplinary hearing would take place on September 25, 2013.

{¶ 13} The letter stated in pertinent part as follows:

> You are charged with violating Directive WR-101 Item:
> 27. Other actions that could compromise or impair the ability of the employee to effectively carry out his/her duties as a public employee.
>
> The basis of the charge is as follows: On August 16, 2013 your Commercial Driver's License was placed on ALS suspension. The ALS suspension is for a period greater than 120 days.

(Nov. 19, 2015 Hilbert Dep., Ex. E.)

{¶ 14} As noted above, Hilbert's administrative license suspension ("ALS") was terminated on September 4, 2013. Brown was aware of this fact, but the pre-disciplinary hearing went forward anyway on September 25, 2013, as scheduled. Sometime in late September, Bobby Johnson, labor relations administrator, received a report from the Bureau of Motor Vehicles (dated September 25, 2013) that Hilbert's Class A commercial driver's license was still suspended. According to the contract with OCSEA, any ODOT employee who cannot drive for work for more than 120 days must either resign or be removed from employment. ODOT takes the position that the loss or suspension of a Class A commercial driver's license by an employee who is mandated to have a Class A commercial driver's license means that the employee cannot drive for work.

{¶ 15} The hearing officer determined that the ALS was still in place, and the matter was referred to the central office in Columbus, Ohio. On September 30, 2013, the director of ODOT issued a letter terminating Hilbert's employment effective October 4, 2013. The letter stated that Hilbert had "violated Directive WR-101, Item 27 - Other actions that could compromise or impair the ability of the employee to effectively carry out his/her duties as a public employee." (Hilbert Dep., Ex. F.)

{¶ 16} On October 1, 2013, Middleton, the benefits administrator, received a designation notice form, requesting additional information from Hilbert's treating physician regarding his FMLA request. She forwarded this form to Hilbert the next day, but Hilbert did not respond as he had already received his termination notice.

{¶ 17} Hilbert filed suit against ODOT in the Court of Claims of Ohio alleging three claims: (1) interference with his right to medically related leave under the FMLA to deal with anxiety and alcoholism in violation of 29 U.S.C. 2615(a)(1); (2) retaliation for exercising his rights under the FMLA in violation of 29 U.S.C. 2615(a)(2); and (3) discrimination on the basis of his disability, alcoholism, in violation of the Ohio Fair Employment Practices Act, R.C. 4112.02(A) and 4112.99.

{¶ 18} The parties filed cross-motions for summary judgment. On February 24, 2016, the trial court denied Hilbert's motion for summary judgment and granted ODOT's motion for summary judgment. Hilbert timely filed an appeal to this court.

## II. ASSIGNMENT OF ERROR

{¶ 19} Hilbert assigns a single error with four attendant issues for our review:

The Trial Court Erred Granting a Summary Judgment in Favor of ODOT and Against Hilbert on Each Claim Raised in His Complaint.

A. First Issue Presented for Review:
The trial court erred in ruling that Hilbert's Class A CDL was suspended, for purposes of driving heavy vehicles at work, and that as a result, he was unable to perform the duties of a Signal Electrician 2.

B. Second Issue Presented for Review:
The trial court erred in ruling that ODOT did not interfere with Hilbert's right to FMLA by terminating him within three weeks of his applying for such leave.

C. Third Issue Presented for Review:
The trial court erred in ruling that ODOT did not retaliate with Hilbert's right to FMLA by initiating disciplinary proceedings against him within a week of his requesting FMLA leave.

D. Fourth Issue Presented for Review:
The trial court erred in ruling that ODOT did not discriminate against Hilbert on the basis of his disability after he sought treatment for alcoholism through ODOT'S Employee Assistance Program.

## III. STANDARD OF REVIEW

{¶ 20} Civ.R. 56(C) provides in pertinent part that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 21} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 65-66 (1978).

{¶ 22} Our review of summary judgment is de novo. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12.

## IV. DISPUTE OVER COMMERCIAL DRIVER'S LICENSE

{¶ 23} ODOT fired Hilbert, claiming that the loss of his commercial driver's license impaired Hilbert's ability to perform his duties for ODOT. ODOT began disciplinary proceedings against Hilbert on the grounds that he had taken "actions that could compromise or impair the ability of the employee to effectively carry out his/her duties as a public employee." (Hilbert Dep., Ex. E.) ODOT stated: "The basis of the charge is as follows: On August 16, 2013 your Commercial Driver's License was placed on ALS suspension. The ALS suspension is for a period greater than 120 days." *Id.* In other words, ODOT was contending that Hilbert was unable to perform his job duties because his commercial driver's license had been placed on ALS suspension for a period of more than 120 days.

{¶ 24} Construing the evidence most strongly in favor of Hilbert, it is undisputed that Hilbert could perform all of the job duties of a Signal Electrician 2 without the need for a commercial driver's license. While Hilbert's Class A commercial driver's license was suspended administratively under R.C. 4511.191 for his refusal to take a breathalyzer test, on September 4, 2013, the municipal court judge terminated that suspension and imposed his own six-month suspension with unlimited driving privileges while at work.

As of that date, Hilbert could have driven an auger truck or a crane truck if necessary, although no Signal Electrician had done so in the past five to six years. In addition, Hilbert could have driven a bucket truck used to repair traffic signals, as a commercial driver's license is not necessary to drive that particular vehicle.

{¶ 25} Moreover, Hilbert's driving privileges were only administratively suspended for 19 days until the municipal court judge terminated the ALS on September 4, 2013. Thus, ODOT's claim that the administrative license suspension was for a period of more than 120 days is a disputed question of fact. The ALS was terminated by the municipal court judge who then imposed his own license suspension that provided for full work-related driving privileges allowing Hilbert to drive to and from work, and while at work, 24 hours a day. (Hilbert Dep., Ex. A.) The judge placed no restrictions on Hilbert's ability to drive vehicles requiring a commercial driver's license certification, but the sentencing documents do not contain a specific reference to Hilbert's commercial driver's license. Moreover, Michael Brown was aware of this fact because he testified at his deposition that he had gone on line and reviewed the pertinent court documents and because Hilbert had informed him of the resolution of his charges. (Nov. 23, 2015 Brown Dep. at 16.)

{¶ 26} ODOT brought forth evidence that they received a print out from the Bureau of Motor Vehicles showing that Hilbert's Class A commercial driver's license was still suspended. (Dec. 21, 2015 Def.'s Mot. For Summ. Jgmt., Bobby Johnson Aff., Ex. C.) At best, this evidence creates a genuine issue of material fact as to whether Hilbert's commercial driver's license was still suspended because the documents from the municipal court proceedings demonstrate that the municipal court judge terminated the ALS.

{¶ 27} Thus, a genuine issue of material fact exists regarding whether the proffered reason for Hilbert's termination (inability to perform his duties as a public employee) was false or pretextual.

## V. FMLA CLAIMS

{¶ 28} One reason the FMLA was enacted was to allow employees "to take reasonable leave for medical reasons." 29 U.S.C. 2601(b)(2). The FMLA provides eligible employees with an entitlement of 12 workweeks of leave during a 12-month period for a serious health condition that renders the employee unable to perform the functions of his

or her position. 29 U.S.C. 2612(a)(1)(D). Hilbert has asserted two theories of recovery under the FMLA.

{¶ 29} Hilbert's first claim is the interference or entitlement theory based on 29 U.S.C. 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 USCS 2611 et seq.]." The second theory is retaliation or discrimination arising under 29 U.S.C. 2615(a)(2), which prohibits employers from discharging or otherwise discriminating against individuals who oppose unlawful FMLA practices.

## VI. INTERFERENCE CLAIM

{¶ 30} A prima facie interference claim under the FMLA requires that Hilbert must show that: (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and, (5) the employer denied the employee FMLA benefits to which he was entitled. *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir.2006); *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir.2012); *Hartman v. Ohio Dept. of Transp.*, 10th Dist. No. 16AP-222, 2016-Ohio-5208, ¶ 36.

{¶ 31} With respect to Hilbert's claim of interference with his FMLA rights, there is no dispute that Hilbert was an eligible employee and ODOT is an employer for purposes of the FMLA. ODOT argues that Hilbert was not eligible to receive FMLA leave because he was terminated for conduct that occurred prior to the request for FMLA leave. However, ODOT admits that, under the OCSEA contract, ODOT had to allow Hilbert time to attempt to get his driving privileges restored.

{¶ 32} The Monday after Hilbert received his traffic ticket, Mike Brown warned Hilbert that he needed to have a commercial driver's license to keep his job. Hilbert replied that he intended to retain counsel and have his driving privileges restored. By the time Hilbert contacted Middleton for FMLA leave and the officials at ODOT began trying to fire him, Hilbert had full work-related driving privileges to the extent authorized by the judge who handled the case at the municipal court level. Whether a municipal court judge could authorize full privileges of a commercial driver's license which is a federal endorsement on an Ohio driver's license is less than clear. The fact that the Ohio Bureau of Motor Vehicles may not have had completely up-to-date information about the status

of Hilbert's driving privileges when ODOT inquired about Hilbert's driving privileges is a distinct possibility and raises a factual dispute that cannot be resolved by summary judgment proceedings.

{¶ 33} Hilbert contacted Middleton, the benefits administrator, and requested leave from his job under the FMLA on September 12, 2013. Middleton forwarded an FMLA packet to Hilbert that same day, informing him that he was eligible for FMLA leave. After submitting the form to his physician, Hilbert returned it to Middleton who received it on September 24, 2013, the day before the pre-disciplinary hearing. Mike Brown was aware that Hilbert had requested FMLA leave before the September 20, 2013 meeting at the gas station where Brown attempted to persuade Hilbert to resign. Thus, it appears that the record shows that Hilbert was eligible for FMLA leave.

{¶ 34} Medical certification is another issue, and ODOT requested additional information from Hilbert's physician. On October 2, 2013, Middleton sent Hilbert a Designation Notice requesting additional information. Under FMLA regulations, Hilbert had seven days to provide the requested information. 29 C.F.R. 825.305(c). An employer has a duty to provide a reasonable opportunity to the employee to cure any deficiency in the certification. *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir.2005). Furthermore, an employer's breach of its certification obligations under 29 C.F.R. 825.305 may give rise to an interference claim. *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 156-57 (3d Cir.2015).

{¶ 35} When ODOT received what it believed to be insufficient certification, ODOT was required to: (1) advise Hilbert that his certification was insufficient, (2) state in writing what additional information was necessary to make it sufficient, and (3) provide him with an opportunity to cure before denying his request for leave. 29 C.F.R. 825.305(c). ODOT instead terminated Hilbert before he even received the Designation Notice. Instead of having the chance to exercise his rights in a meaningful way and demonstrate his entitlement to leave, ODOT fired him. As such, the record indicates that Hilbert established a prima facie claim of interference with his rights under the FMLA. He sufficiently raised the issue that he was prejudiced as a result of ODOT's failure to allow an opportunity to cure any alleged deficiency.

{¶ 36} Based on these facts, a reasonable trier of fact could conclude that ODOT denied Hilbert FMLA leave by firing him before he could begin his leave to enter a rehabilitation program. "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir.2007). Thus, it appears that Hilbert has established a prima facie case of FMLA interference sufficient to overcome a motion for summary judgment.

{¶ 37} The Sixth Circuit and this court have held that FMLA claims are to be evaluated under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Donald* at 762; *Hartman* at ¶ 38.

{¶ 38} Therefore, Hilbert's establishment of a prima facie case of interference with his rights under the FMLA shifts the burden of production to ODOT to articulate a legitimate, non-discriminatory reason for terminating him. After an employer articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff who must prove by a preponderance of the evidence that the employer's reason is pretextual. But here, in order " 'to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale.' " *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir.2012), quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir.2007).

{¶ 39} ODOT argues that Hilbert was terminated for reasons unrelated to his FMLA request. ODOT states in its brief that Hilbert was terminated because his Class A commercial driver's license was suspended for more than 120 days. But according to the letter Hilbert received from the central office, Hilbert was terminated because his actions allegedly compromised or impaired his ability to carry out his duties as a public employee. As discussed above in connection with issue one, we find that genuine issues of material fact preclude making this finding in favor of ODOT. There is sufficient dispute surrounding the effect of the judicial termination of the ALS and the imposition of a different suspension with full driving privileges to preclude summary judgment on this claim.

## VII. RETALIATION CLAIM

{¶ 40} In order to make out a prima facie retaliation/termination claim under the FMLA, Hilbert must show that: (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald* at 761.

{¶ 41} It is undisputed that Hilbert applied for FMLA leave on September 12, 2013, and Mike Brown learned of that fact on the same day. He made the decision to terminate Hilbert no later than September 20, 2013, when he tried to get Hilbert to resign, and when that failed, initiated disciplinary proceedings.

{¶ 42} A plaintiff satisfies the element of causation when he produces evidence from which an inference can be drawn that the adverse action would not have been taken in the absence of the protected conduct. *Nguyen v. Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). Proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection. *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir.2007), citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir.2001). For example, a plaintiff satisfied the low threshold of proof necessary to establish a prima facie case of retaliatory discharge where the employee was terminated within three weeks of returning from FMLA leave and two months after first notifying the employer of the need for leave. *Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 283 (6th Cir.2012).

{¶ 43} Here, the record indicates that ODOT knew that Hilbert had applied for FMLA based upon stress and anxiety resulting from his arrest, a recent divorce, and foreclosure proceedings. ODOT began disciplinary proceedings a little over one week later and fired him less than one month after he applied for FMLA leave. This temporal proximity is sufficient to establish a causal connection between the exercise of his FMLA rights and his termination.

{¶ 44} ODOT argues that it fired Hilbert before his FMLA request was granted, so therefore it did not interfere with his FMLA rights. As discussed in connection with his interference claim, ODOT fired Hilbert before the required time to respond to the allegedly insufficient certification had run.

{¶ 45} As discussed in connection with issues one and two, there exists a genuine issue of material fact as to whether ODOT's termination for allegedly being unable to perform the duties of a Signal Electrician 2 was a pretext for discrimination. We cannot know from the record what motivated the director of ODOT and upper level administration at ODOT to fire Hilbert. We find that there is sufficient evidence to preclude summary judgment.

## VIII. DISABILITY DISCRIMINATION CLAIM

{¶ 46} Hilbert asserted that ODOT discriminated against him on the basis of his disability: alcoholism compounded by anxiety and stress, in violation of R.C. 4112.01 et seq.

{¶ 47} R.C. 4112.01(A) prohibits discrimination based on a disability as follows:

> It shall be an unlawful discriminatory practice:
>
> (A) For any employer, because of * * * disability * * * to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶ 48} To prevail on a claim of disability discrimination under Ohio law, a person must establish: (1) that he or she was disabled; (2) that an adverse action was taken by the employer, at least in part, because the person was disabled; and (3) that the person, though disabled, can safely and substantially perform the essential functions of the job in question. *Taylor v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-385, 2011-Ohio-6060, ¶ 13. If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 14, *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once the employer does that, the burden shifts to the plaintiff to show "that the proffered reason was not the true reason" for the adverse employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

{¶ 49} A disability is a "physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a

record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). Alcoholism is a disability as defined in R.C. 4112.01(A)(13). *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, syllabus. Under R.C. 4112.01(A)(16)(a)(iii), alcoholism is defined as a physical or mental impairment.

{¶ 50} ODOT argues that Hilbert cannot establish that he was disabled because the record does not establish that he was diagnosed as an alcoholic, that he was regarded as an alcoholic, or that his alleged alcoholism substantially limited a major life activity.

{¶ 51} The evidence in the record is unrefuted that Hilbert had a family history of alcoholism, he was cited for the offense of operating a motor vehicle while impaired, he sought treatment through ODOT's EAP for alcoholism, two psychologists diagnosed him as having signs of alcoholism, he began searching for a rehabilitation program, and he requested FMLA leave (which necessitated being off work) in order to obtain treatment to deal with his problems. ODOT's seeming hurry to terminate him before he could finish seeking professional help creates an inference in favor of Hilbert that the adverse action of termination was taken at least in part because of his disability.

{¶ 52} Construing this evidence most strongly in favor of Hilbert, at the very least, there is a genuine issue of material fact as to whether Hilbert suffered from alcoholism.

{¶ 53} As discussed in connection with issues one, two, and three, there exist genuine issues of material fact as to whether ODOT's termination for allegedly being unable to perform the duties of a Signal Electrician 2 was a pretext for discrimination and whether he was terminated, at least in part, for reasons relating to his disability as alleged.

{¶ 54} As a result of the foregoing, we find merit in Hilbert's assertions under the four issues presented for review. We sustain the assignment of error.

{¶ 55} We therefore reverse the judgment of the Court of Claims of Ohio and remand the case to that court for further appropriate proceedings.

*Judgment reversed and*
*remanded for further proceedings.*

DORRIAN and BRUNNER, JJ., concur.

———————————