[Cite as *Sullivan v. IKEA*, 2020-Ohio-6661.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STEWART SULLIVAN, | : | CASE NO. CA2019-09-150 |
| Appellant, | : | O P I N I O N<br>12/14/2020 |
| | : | |
| - vs - | : | |
| | : | |
| IKEA, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2018-05-1073

Duwel Law, David M. Duwel, 130 W. Second Street, Suite 2101, Dayton, Ohio 45402, for appellant

Jackson Lewis P.C., Patricia Anderson Pryor, Mark B. Gerano, 201 E. Fifth Street, 26th Floor, Cincinnati, Ohio 45202, for appellee

**M. POWELL, P.J.**

{¶1} Appellant, Stewart Sullivan, appeals a decision of the Butler County Court of Common Pleas granting summary judgment to appellee, IKEA, in an age discrimination and retaliation action.

{¶2} In 2007, IKEA hired Sullivan as a Work IKEA Manager at its West Chester, Ohio store. As such, Sullivan managed the store's office furniture and work-spaces

showroom. Later on, Sullivan also became an IKEA Business Manager. As manager, Sullivan was salaried and scheduled to work five days a week. While employed at IKEA, Sullivan took several medical leaves of absence. IKEA never denied any of Sullivan's leave requests.

{¶3} IKEA's policies require that all work absences, whether planned or unplanned, be covered by Paid Time Off ("PTO") until PTO leave is exhausted. Under the policies, PTO must also be used for any Family Medical Leave Act ("FMLA") leave that is not otherwise paid by another benefit such as short-term disability. Furthermore, PTO "must be used in the first week (5 scheduled shifts) of an approved leave of absence, known as the elimination week for short-term disability[.]" Once an employee exhausts PTO, further absences are without pay. Employees are required to record their use of PTO into the Employee Self Service ("ESS") online system in a timely manner and to review their paychecks to identify and correct errors. Employees can access ESS at home or at work. Falsification of time records can lead to termination. Sullivan was aware of the foregoing policies.

{¶4} On June 10, 2016, Self-Serve Manager Michael Jones reported a customer complaint to Sullivan and asked him to meet with the customer to resolve the complaint. Sullivan refused to do so because it would have required him to report to work early. Jones reported Sullivan's refusal to meet with the customer to Phil Wilson, Sullivan's supervisor, and Anna Carroll, the store manager. Two days later, Sullivan verbally complained to Jill Clay, the Human Resource Business Partner, that he was tired of being bullied by Jones and that a week or so earlier, Jones had made an offensive comment to him about Sullivan's sexual orientation. At Clay's behest, Sullivan filed a complaint.

{¶5} Sullivan's complaint described the incident as follows. Sullivan, Jones, and another manager ("Eric") were walking back to the showroom. Jones and Eric were on one

- 2 -

side of the aisle, Sullivan was on the other side. After Sullivan said to Eric, "you should be on my side of the aisle," Jones essentially replied that he and Eric "were on the right side of the aisle as it's the 'gay side' and come on Stu, you know you're supposed to be on this side too[.]" Sullivan's complaint further stated that Jones had made remarks about Sullivan's weight and insinuating comments about his sexual orientation over the years. Clay investigated the incident and obtained statements from other employees, including Eric. Eric's June 15, 2016 written statement indicated that he and Jones were gay and that during the incident, Jones had essentially told Sullivan to come to their side, "you know you wanna come out of the closet."

{¶6} Clay shared the results of her investigation with Sullivan and told him she would meet personally with all involved and tell them to cease making inappropriate comments and banter. In September 2016, Sullivan purportedly made another claim of sexual harassment to Kristen Naseef, IKEA's Relations Specialist. This claim involved a different employee. In his deposition, Sullivan testified that he did not provide details or the employee's name to Naseef and that at most, he may have made a comment in a "general sense" that he had "another issue with another person making inappropriate advances to [him]." In her affidavit, Naseef stated she spoke to Sullivan for the first time in October 2016 and that Sullivan never claimed to her that Jones or other coworkers were making advances to him.

{¶7} Sullivan was scheduled to be on a two-week vacation beginning June 24, 2016. However, Sullivan cancelled his vacation but remained on leave after his mother suffered a heart attack on June 23, 2016. Sometime after July 27, 2016, Sullivan sought FMLA leave to care for his mother. The FMLA leave was approved from July 20, 2016, through August 4, 2016. Intermittent FMLA leave was also approved for two days twice a month beginning August 5, 2016. Sullivan's ESS record shows that he was absent from

work 23 days between June 24, 2016, and July 19, 2016, but only submitted 3 days of PTO, and that he failed to submit 7 days of PTO during his first FMLA leave.

{¶8} On August 1, 2016, Wilson texted Sullivan to remind him he needed to call off and submit PTO for any missed shifts, and that he needed to submit PTO "for the last 2 weeks of missed shift." On August 3, 2016, Wilson once again reminded Sullivan he needed to call off for any missed shifts. From August 5, 2016, through September 4, 2016, Sullivan was absent from work 13 days but only reported 1 day of PTO. He requested and received both FMLA leave to care for his parents and short-term disability for himself from September 5, 2016, through September 23, 2016. Sullivan received full pay for the more than 20 days between June 24, 2016, and September 5, 2016, that he was absent from work and not under FMLA leave and for which he did not submit PTO.

{¶9} Wilson resigned in September 2016 while Sullivan was on leave. Nathan Disch took over some of Wilson's responsibilities and began reviewing the attendance records for all workers. On October 3, 2016, Disch spoke with Sullivan about the attendance records of Sullivan's staff. That same day, Sullivan corrected his staff's attendance records but did not review his own. On October 4, 2016, Disch spoke with Sullivan about his own attendance record and identified several summer days where Sullivan had been absent from work and had either not submitted PTO or submitted PTO for only a portion of the absences. Although Sullivan admitted understanding IKEA's PTO policy and how to comply, his only explanation for not submitting PTO was that he likely forgot. Disch continued his investigation. Following his conversation with Disch, Sullivan spoke with Naseef about the PTO issue. Naseef suggested that Sullivan speak with Disch in an effort to resolve the PTO issue. Sullivan declined to do so, preferring a wait-and-see approach.

{¶10} Disch discovered 33 days where Sullivan was absent from work and did not submit PTO. Yet, during that same period, Sullivan had properly submitted PTO for other

instances of time off, thus indicating his understanding and ability to comply with the PTO policy. Disch also discovered PTO issues regarding the attendance records of the store's other managers; however, Sullivan was the only manager with more than four absences from work that were not claimed as PTO. The other managers were counselled and their records corrected. Sullivan, however, had taken so much leave that he did not have sufficient PTO to cover all of his absences. The instances of time off that Sullivan did not claim as PTO totaled 264 hours for which he was paid approximately $9,000. Sullivan's failure to submit PTO allowed him to retain his PTO while still receiving full pay for time off.

{¶11} As a result, Disch terminated Sullivan on October 31, 2016. At the time of the termination, Disch was not aware that Sullivan had made complaints about workplace harassment. In an affidavit, Disch further stated that Sullivan's termination had nothing to do with his age or use of FMLA leave.

{¶12} Sullivan appealed his termination to Naseef. Sullivan admitted he knew he had less than 20 hours of PTO after he had submitted his request for the summer vacation he ultimately did not take. Sullivan offered several possible reasons for failing to submit PTO, including the fact he may have forgotten to submit PTO, Wilson's failure to alert him of the PTO issues, his belief Wilson was submitting PTO on his behalf, and the fact the ESS system was down for several days. Sullivan asserted that upon reviewing his records, he had found nine violations between October 2015 and May 2016 and 17 violations between June 2016 and September 2016. Sullivan challenged three to five of the 26 violations, thus leaving more than 20 violations that he could not justify. Naseef upheld Sullivan's termination.

{¶13} On May 7, 2018, Sullivan filed a complaint in the trial court alleging that his termination was the product of age discrimination in that younger employees with similar PTO issues were treated differently, retaliation for filing and raising sexual harassment

claims, and violation of the FMLA. IKEA moved for summary judgment, supporting the motion with the affidavits of Naseef and Disch and Sullivan's deposition. On August 9, 2019, the trial court granted summary judgment in favor of IKEA, finding that Sullivan had failed to establish a prima facie case of age discrimination, retaliation, and violation of the FMLA.

{¶14} Specifically, the trial court found that Sullivan's age discrimination claim failed as a matter of law because Sullivan failed to establish he was qualified for his position as his job performance did not meet IKEA's legitimate expectations regarding the proper reporting and recording of PTO. The trial court further found that Sullivan failed to establish that other managers who were allowed to correct their PTO issues were under the age of 40.

{¶15} The trial court found that Sullivan's retaliation claim for filing a sexual harassment complaint failed as a matter of law because the June 2016 complaint was too remote in time from Sullivan's October 31, 2016 termination to establish a causal connection between the two events. Regarding Sullivan's September 2016 sexual harassment claim, the trial court stated that "based on Naseef's affidavit, [it] cannot find the September, 2016, report was ever made, as [Sullivan's] deposition assertion is not supported by any other submitted evidence, and is in fact denied by the party to whom he allegedly made that report."

{¶16} The trial court found that Sullivan's FMLA violation claim failed as a matter of law because Sullivan failed to establish a prima facie case under either of two possible theories of liability.

{¶17} Sullivan now appeals, challenging the grant of summary judgment to IKEA in three assignments of error.

{¶18} An appellate court reviews a trial court's decision on a motion for summary

- 6 -

judgment de novo, independently, and without deference to the decision of the trial court. *Collins v. Mason*, 12th Dist. Warren No. CA2019-04-035, 2020-Ohio-1186, ¶ 18. Summary judgment is proper when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10.

{¶19} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. *Id.* In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Collins* at ¶ 19.

{¶20} Assignment of Error No. 1:

{¶21} THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S RETALIATION CLAIM.

{¶22} R.C. 4112.02(I) provides in relevant part that it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, * * * or participated in any manner in any investigation, proceeding, or hearing under [R.C.] 4112.01 to 4112.07[.]"

{¶23} In the absence of direct evidence, a plaintiff alleging retaliation must establish a prima facie case using indirect evidence, by demonstrating that (1) he or she engaged in a protected activity, (2) the employer was aware that the plaintiff had engaged in that

- 7 -

activity, (3) the employer took an adverse employment action against the plaintiff, and (4) there is a causal connection between the protected activity and adverse action. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 13. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate nondiscriminatory reason for" its action. *Nebozuk v. Abercrombie & Fitch* Co., 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 41. If the employer carries its burden, the burden then shifts back to the plaintiff to prove that the employer's stated reason is merely a pretext for discrimination. *Id.*

{¶24} "The language of R.C. 4112.02(I) is virtually identical to 42 U.S.C. 2000e-3(a). Due to the similarities in Title VII and R.C. Chapter 4112, Ohio courts look to federal case law addressing Title VII for assistance in interpreting R.C. Chapter 4112." *Smith v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 12AP-1073, 2013-Ohio-4210, ¶ 60; *Grubach v. Univ. of Akron*, 10th Dist. Franklin No. 19AP-283, 2020-Ohio-3467, ¶ 67.

{¶25} As stated above, Sullivan alleged he was terminated in retaliation for making sexual harassment complaints in June and September 2016. On appeal, Sullivan generally argues that the trial court erred in granting summary judgment in favor of IKEA regarding both complaints. We first address Sullivan's September 2016 complaint.

{¶26} The trial court found that Sullivan could not establish a prima facie case of retaliation because "based on Naseef's affidavit, [it] cannot find the September, 2016, report was ever made, as [Sullivan's] deposition assertion is not supported by any other submitted evidence, and is in fact denied by the party to whom he allegedly made that report." Sullivan summarily challenges the trial court's finding, asserting that it ignores his "sworn deposition testimony that he had in effect filed such a claim with Naseef by way of a verbal conversation."

{¶27} It is well established that a vague charge of discrimination is insufficient to

constitute opposition to an unlawful employment practice for purposes of a claim of retaliation in employment. *See Fox v. Eagle Distrib. Co.*, 510 F.3d 587 (6th Cir.2007); *Balding-Margolis v. Cleveland Arcade*, 352 Fed.Appx. 35 (6th Cir.2009); *Springs v. Cincinnati Children's Hosp. Med. Ctr.*, S.D.Ohio No. 1:10-cv-213, 2012 U.S. Dist. LEXIS 54595 (Apr. 17, 2012). An employee cannot invoke the protections of an anti-retaliation statute by making a vague charge of discrimination. In his deposition, Sullivan testified that he did not provide Naseef with details or the employee's name and that at most, he "may have just" made a comment in a "general sense" that he had "another issue with another person making inappropriate advances to [him]." We find no error in the trial court granting summary judgment to IKEA on Sullivan's retaliation claim based upon his September 2016 complaint.

{¶28} Sullivan filed his June 2016 complaint following an incident during which Jones asked Sullivan to join him and Eric on the "gay side" as the three men were walking back to the showroom, "you know you wanna come out of the closet." The trial court granted summary judgment in favor of IKEA, finding that while Sullivan established he had engaged in protected activity by making the complaint, IKEA was aware Sullivan had engaged in that protected activity, and Sullivan suffered an adverse employment action by being terminated, Sullivan failed to establish a causal connection between the two events because the June 2016 complaint was too remote in time from Sullivan's October 31, 2016 termination.

{¶29} In its motion for summary judgment, IKEA argued that Sullivan did not engage in protected activity because the June 2016 complaint alleged sexual orientation harassment and not sexual harassment, R.C. 4112.02 does not include sexual orientation discrimination within its protections, and R.C. 4112.02(I) does not prohibit retaliation for practices that are not prohibited by R.C. 4112.02. The trial court rejected IKEA's argument, finding that "[w]hether or not the alleged behaviors of [Sullivan's] co-workers would

technically fall within either the protections of State or Federal law are not at issue in the case at bar," and instead relied upon IKEA's Harassment, Discrimination and Retaliation Prevention Policy.  Based upon the policy's definition of harassment and the requirement that an employee who believes there has been workplace harassment must report it to management, the trial court determined that Sullivan's "belief" he had been sexually harassed was sufficient for his complaint to qualify as protected activity under R.C. 4112.02(I).

{¶30}  We find that the trial court erred in so finding.  R.C. 4112.02(I) clearly provides that it prohibits retaliation only for engaging in activity relating to the reporting, investigation, or determination of practices proscribed by R.C. 4112.02, not those that may be defined by a corporate or organizational policy.  Furthermore, Ohio and federal courts have held that sexual orientation is not a prohibited basis for discriminatory acts and cannot form the basis of a retaliation claim under R.C. 4112.02(I).  *See Colby Burns v. Ohio State Univ. College of Veterinary Med.*, 10th Dist. Franklin No. 13AP-633, 2014-Ohio-1190; *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757 (6th Cir.2006); *Gilbert v. Country Music Assn., Inc.*, 432 Fed.Appx. 516, 520 (6th Cir.2011) (former employee allegedly terminated in retaliation for complaining of harassment and discrimination based on sexual orientation failed to state a claim under Title VII because the conduct he opposed was not an unlawful employment practice).

{¶31}  Facially, Sullivan's June 2016 complaint did not involve sexual harassment. Sexual harassment may take one of two forms, namely, "quid pro quo" harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or "hostile environment" harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 2000-Ohio-128, paragraph one of the syllabus.  In order to establish hostile-environment sexual harassment, the

plaintiff must show that (1) the harassment was unwelcome, (2) the harassment was based on sex, (3) the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Id.* at 176-177.

{¶32} Jones' remark to Sullivan satisfied neither quid pro quo nor hostile-environment sexual harassment because the remark was not linked to the grant or denial of an employment benefit and it lacked the severity and pervasiveness necessary to affect the terms, conditions, or privileges of Sullivan's employment. Thus, whether Sullivan was offended by Jones' remark and justified in complaining about it pursuant to IKEA's Harassment, Discrimination and Retaliation Prevention Policy, his June 2016 complaint was not protected activity under R.C. 4112.02(I). Thus, the trial court erred in finding that Sullivan established the "protected activity" element of his retaliation claim.

{¶33} The trial court likewise erred in finding that Sullivan established the second element of his retaliation claim, that is, that IKEA was aware Sullivan had engaged in the protected activity. The trial court reasoned that IKEA was the defending party and that if anyone in IKEA's management was aware of the June 2016 complaint, then that knowledge was imputed to the entire organization. In support of its finding, the trial court cited our opinion in *Ellis v. Jungle Jim's Market, Inc.*, 12th Dist. Butler No. CA2014-12-254, 2015-Ohio-4226. In his deposition, Sullivan testified he reported Jones' "gay side" comment to Clay, the Human Resource Business Partner, in June 2016 and that on her behest, he filed a written complaint about the incident on June 12, 2016. Sullivan further testified this was the first time he was complaining about sexual harassment.

{¶34} "'The decision[]maker's knowledge of the protected activity is an essential

element of the prima facie case of unlawful retaliation.'" *Messer v. Summa Health Sys.*, 9th Dist. Summit No. 28470, 2018-Ohio-372, ¶ 52, quoting *Frazier v. USF Holland, Inc.*, 250 Fed.Appx. 142, 148 (6th Cir.2007). Notwithstanding this court's use of the phrase "defending party" in *Ellis*, caselaw plainly provides that it is the knowledge of the decision-maker, that is, the individual charged with taking the adverse employment action, that is critical in establishing the knowledge element of a prima facie case of retaliation. *Taylor-Stephens v. Rite Aid of Ohio*, 8th Dist. Cuyahoga No. 106324, 2018-Ohio-4714, ¶ 52; *Cline v. BWXT-12, LLC*, 521 F.3d 507, 513 (6th Cir.2008); *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir.2002); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir.1999) (affirming the grant of summary judgment where the plaintiff was unable to produce evidence sufficient to establish that the individuals charged with taking the adverse employment action knew of the protected activity).[1]

{¶35} Sullivan was terminated by Disch in October 2016. In his affidavit, Disch avers that "[a]t the time I began the investigation, and when I made the termination decision, I was not aware of any complaint of harassment that Sullivan may have made. Neither the investigation into the PTO issues nor his termination have anything to do with any prior issues he had or complaint(s) that he may have made." Sullivan has not presented any summary judgment evidence to contradict Disch's averment. Thus, the trial court erred in finding that Sullivan established the "knowledge of protected activity" element of his retaliation claim.

{¶36} Sullivan argues the trial court erred in finding he failed to establish a causal

---

1. A legal database search reveals that this court has used the phrase "defending party" only twice when setting forth the elements of a prima facie case of retaliation, in *Ellis v. Jungle Jim's Market, Inc.*, 12th Dist. Butler No. CA2014-12-254, 2015-Ohio-4226, and in a 2009 case. The use of the phrase had no impact on the outcome of the case in *Ellis* as this court's analysis focused solely on whether the plaintiff had suffered an adverse employment action and whether there was a causal connection between the plaintiff's filing of a complaint with the Ohio Civil Rights Commission and her transfer from the seafood department.

connection between his June 2016 complaint and his October 31, 2016 termination.

{¶37} A causal connection may be shown through direct evidence or through knowledge coupled with a closeness in time that creates an inference of causation. *Knepper v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1155, 2011-Ohio-6054, ¶ 27. Close temporal proximity between the employer's knowledge of the protected activity and the adverse employment action alone may be significant enough to constitute evidence of a causal connection, but only if the adverse employment action occurs very close in time after an employer learns of a protected activity. *Ellis*, 2015-Ohio-4226 at ¶ 54. However, where some time elapses between when the employer learns of the protected activity and the subsequent adverse employment action is taken, the employee must produce other evidence of retaliatory conduct to establish causation. *Id.*; *Knepper* at ¶ 28. Courts have found intervals of two to four months insufficient to show a causal connection. *See Collins*, 2020-Ohio-1186; *Spitulski v. Toledo School Dist. Bd. Of Edn.*, 6th Dist. Lucas No. L-17-1300, 2018-Ohio-3984; *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674 (8th Dist.); *Aycox v. Columbus Bd. Of Edn.*, 10th Dist. Franklin No. 03AP-1285, 2005-Ohio-69.

{¶38} Given the more than four-month interval between Sullivan's June 12, 2016 complaint and his October 31, 2016 termination, no inference of causation can be deduced from temporal proximity. Accordingly, to survive summary judgment, Sullivan was required to submit other evidence of retaliatory conduct between his June 2016 complaint and his termination. However, Sullivan has failed to present such evidence. The trial court, therefore, did not err in finding that Sullivan failed to establish the "causal connection" element of his retaliation claim.

{¶39} In light of the foregoing, we find that Sullivan failed to establish a prima facie case of retaliation. The trial court therefore did not err in granting summary judgment to

IKEA.

{¶40} Sullivan's first assignment of error is overruled.

{¶41} Assignment of Error No. 2:

{¶42} THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S AGE DISCRIMINATION CLAIM.

{¶43} R.C. 4112.02(A) makes it an unlawful discriminatory practice

> [f]or any employer, because of the * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶44} In the absence of direct evidence of discrimination, a plaintiff alleging age discrimination must establish a prima facie case using indirect evidence, by demonstrating that he or she (1) is a member of a protected class, (2) was qualified for the position in question, (3) suffered an adverse employment action despite his or her qualifications, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age. *Coryell v. Bank One Trust* Co. *N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 9. Alternatively, a plaintiff can establish the fourth prong by demonstrating that a "comparable non-protected person was treated better." *Cittadini v. Southwest Gen. Health Sys.*, 8th Dist. Cuyahoga No. 96254, 2011-Ohio-6464, ¶ 15; *Mittler v. OhioHealth Corp.*, 10th Dist. Franklin No. 12AP-119, 2013-Ohio-1634, ¶ 36. The statutorily-protected class includes persons age 40 or older. R.C. 4112.14(A); *Pierce v. Brown Publishing Co.*, 12th Dist. Fayette No. CA2006-07-027, 2007-Ohio-1657, ¶ 10.

{¶45} If the plaintiff successfully establishes a prima facie case of age discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Collins*, 2020-Ohio-1186 at ¶ 25. Should the employer carry this burden, the plaintiff must then prove by a preponderance of the evidence that the

reason articulated by the employer is merely a pretext for discrimination. *Id.* At all times, however, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff remains with the plaintiff. *Id.*

{¶46} Sullivan challenges the trial court's determination that he failed to establish a prima facie case of age discrimination because he did not present evidence that the other managers who were allowed to correct their PTO issues were under the age of 40. Sullivan asserts he provided such evidence in his deposition and memorandum opposing summary judgment; furthermore, "IKEA never disputed that some of the managers referenced by Sullivan * * * were all under the age of 40, failed to report their [PTO] times and none were terminated[.]"

{¶47} Sullivan was 43 years old when he was terminated. At the time of his termination, IKEA employed nine other managers at its West Chester store. Naseef's affidavit states that three of the managers, John Spirk, Brett St. Claire, and Daniel McGrady, "were over the age of 40 and all older than Sullivan." In his deposition, Sullivan stated that Spirk and McGrady were both over the age of 40. Sullivan, therefore, cannot establish he was treated differently than these three managers because of his age.

{¶48} Regarding the other managers, Sullivan ostensibly asserts that because Naseef's affidavit did not state they were 40 years old or older, IKEA does not dispute they were all under the age of 40. During his deposition, Sullivan did not refer to one of the managers at all and "guesstimated" the age of the other managers.

{¶49} To be similarly situated, the employees with whom the plaintiff seeks to compare his or her treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mittler*, 2013-Ohio-1634 at ¶ 36; *Manion v. Interbrand Design Forum, L.L.C.*,

2d Dist. Montgomery No. 26185, 2015-Ohio-348, ¶ 15. "A person is not similarly situated unless the conduct engaged by the proffered individual is of 'comparable seriousness' to the conduct that predicted the employee/plaintiff's termination." *Kenner v. Grant/Riverside Med. Care Found.*, 10th Dist. Franklin No. 15AP-982, 2017-Ohio-1349, ¶ 33 (10th Dist.).

{¶50} We find that Sullivan failed to establish that the allegedly younger managers were treated more favorably than he was for similar PTO issues. There is no evidence that these managers dealt with the same supervisor. There is no evidence they were paid for the days where they were absent from work and did not submit PTO. Most importantly, IKEA discovered 33 days where Sullivan was absent from work but did not submit PTO. By his own calculation, Sullivan admitted there were 26 violations. While he challenged three to five of these days, he still had over 20 violations. By contrast, the other managers only had one to four days where they were absent from work and did not submit PTO. These numerous instances of Sullivan's failure to claim PTO for his work absences gives rise to a strong inference that he acted deliberately with an intent to defraud IKEA. Although Sullivan did not have to show an exact correlation between himself and another similarly situated employee, he was required to show that the proposed comparators were similar in all relevant respects and had engaged in acts of comparable seriousness. Sullivan failed to demonstrate that the proposed comparable managers were similarly situated in all relevant respects.

{¶51} We therefore find that Sullivan failed to establish a prima facie case of age discrimination. The trial court did not err in granting summary judgment to IKEA.

{¶52} Sullivan's second assignment of error is overruled.

{¶53} Assignment of Error No. 3:

{¶54} THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S FAMILY MEDICAL AND LEAVE ACT CLAIM.

{¶55} The FMLA provides a private right of action to employees to protect their rights to such leave under two different theories: (1) the "interference" or "entitlement" theory, under which employers may not interfere with, restrain, or deny the exercise of or the attempt to exercise FMLA rights, and (2) the "retaliation" or "discrimination" theory, under which employers may not discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA. *Hull v. Astro Shapes, Inc.*, 7th Dist. Mahoning No. 10 MA 26, 2011-Ohio-1656, ¶ 40.

{¶56} FMLA claims are to be evaluated under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *Hilbert v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 16AP-205, 2017-Ohio-488, ¶ 37; *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir.2012). Thus, if a plaintiff establishes a prima facie case of interference or retaliation with his rights under the FMLA, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating him. After an employer articulates a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff who must prove by a preponderance of the evidence that the employer's reason is pretextual.

{¶57} Sullivan's complaint did not specify which FMLA theory he was pursuing. Consequently, the trial court addressed Sullivan's FMLA violation claim under both theories and found that he had failed to establish a prima facie case under either theory. On appeal, Sullivan challenges the trial court's dismissal of his FMLA claim but once again does not articulate which theory he is pursuing. Sullivan asserts he is not alleging he was terminated in retaliation for exercising his FMLA rights but then inconsistently claims he was terminated for work absences he did not claim as PTO and that many of these absences were FMLA days. Sullivan further articulates his FMLA claim as being based upon IKEA's mismanagement of its PTO policy, the failure of his supervisor (Wilson) to properly record

Sullivan's PTO on several occasions, and the fact the ESS system was down at times.

{¶58} To establish a prima facie interference claim under the FMLA, the employee must show that (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled. *Hilbert*, 2017-Ohio-488 at ¶ 30, citing *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir.2006); *Donald*, 667 F.3d at 761.

{¶59} An employer interferes with the exercise of an employee's rights under the FMLA when it refuses to authorize FMLA leave or discourages an employee from using such leave, or when it interferes with a plaintiff's right to reinstatement following FMLA leave. *Arban v. West Publishing Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Donald* at 761. An employee's termination due to absenteeism caused by a medical condition constitutes interference under the FMLA. *Arban* at 402.

{¶60} It is undisputed that Sullivan took multiple leaves of absence throughout his employment with IKEA, including in 2016, and that he was never denied or prevented from taking any time off he requested, whether covered by FMLA or not. It is further undisputed that Sullivan was reinstated to his managerial position following his September 2016 FMLA/short-term disability leave. Having properly done so before, Sullivan was aware of IKEA's requirement to submit PTO for any work absences. Sullivan asserts that many of the absences improperly counted against him by IKEA were FMLA days. However, while the FMLA does provide for unpaid leave, it also permits paid leave through the use of accrued vacation time at the discretion of the employer. *DeCesare v. Niles City School Dist. Bd. of Edn.*, 154 Ohio App.3d 644, 2003-Ohio-5349, ¶ 13 (11th Dist.); *Harrison v.*

*Procter & Gamble Distrib., LLC*, 290 F. Supp. 3d 723 (S.D.Ohio 2017).

{¶61} Sullivan was not terminated for exercising his rights pursuant to the FMLA in 2016. Rather, Sullivan was terminated for failing to submit PTO for several of his absences, failing to correct his time records once appraised of the PTO issues, and failing to monitor his time records. Per his admission to Naseef, Sullivan had over 20 PTO violations. And while Sullivan partly blamed the PTO violations on the fact the ESS system was down, he conceded during his deposition that it was only down on a few occasions. As stated above, the ESS system can be accessed at home or at work. The instances of time off that Sullivan did not claim as PTO totaled 264 hours for which he was paid approximately $9,000. Sullivan's failure to submit PTO allowed him to retain his PTO while still receiving full pay for time off. In other words, Sullivan was terminated for his abuse of IKEA's PTO policy.

{¶62} "'A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory.'" *Anderson v. Wellman Products Group*, 157 Ohio App.3d 565, 2004-Ohio-3420, ¶ 21 (9th Dist), quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir.2002). Sullivan's abuse of the PTO policy presents a lawful reason for terminating his employment that does not present an interference violation of the FMLA. This is because "the right to non-interference with medical leave * * * is not absolute." *Arban*, 345 F.3d at 401. Thus, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.* IKEA's proffered reason for terminating Sullivan satisfies this rule. The trial court, therefore, did not err in granting summary judgment to IKEA on Sullivan's FMLA violation claim under the interference theory.

{¶63} To establish a prima facie retaliation claim under the FMLA, the employee must show that (1) he was engaged in an activity protected by the FMLA; (2) the employer

knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Hilbert*, 2017-Ohio-488 at ¶ 40, citing *Donald*, 667 F.3d 757. The elements of an FMLA retaliation claim are similar to the elements of a retaliation claim under R.C. 4112.02.

{¶64} Under the FLMA, an employer is prohibited from discriminating against employees who have used FMLA leave and from using the taking of FMLA leave as a negative factor in employment actions. *Arban*, 345 F.3d at 403. This prohibition includes retaliatory discharge for taking leave. *Id.*

{¶65} The trial court found that Sullivan failed to establish a causal connection between his use of FMLA leave and his termination. A plaintiff satisfies the element of causation when he produces evidence from which an inference can be drawn that the adverse action would not have been taken in the absence of the protected conduct. *Nguyen v. Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). Temporal proximity between the protected activity and the adverse employment action does not give rise to a finding of causal connection unless "coupled with other indicia of retaliatory conduct." *Dixon v. Gonzales*, 481 F.3d 324, 333-334 (6th Cir. 2007); *Halker v. Bob Evans Farms, Inc.*, S.D.Ohio No. 2:13-cv-893, 2014 U.S. Dist. LEXIS 127379 (Sep. 11, 2014).

{¶66} As the trial court found, Sullivan "has produced no evidence other than his own opinions and conjectures that remotely connect the timing of the * * * PTO investigation to his use of FMLA time." Nor is there other indicia of retaliatory conduct. Rather, there is undisputed evidence that Sullivan has taken multiple FMLA leaves over the years without issue, including in 2016. Such rebuts any allegation of a causal connection between Sullivan's 2016 FMLA leaves and his termination. *Halker* at *24 (An employer's prior

- 20 -

approval of FMLA leave and its granting of requests for FMLA leave to employees has been found to rebut the allegation that a causal connection exists between a plaintiff's discharge and his FMLA leave request). The trial court, therefore, did not err in finding that Sullivan failed to establish a prima facie retaliation claim under the FMLA.

{¶67} Even assuming, arguendo, that Sullivan established an FLMA retaliation prima facie claim, IKEA has offered a valid, nondiscriminatory reason for termination. Sullivan's abuse of IKEA's PTO policy as discussed above made him subject to termination under IKEA's policies. Accordingly, IKEA has a legitimate, nondiscriminatory reason for termination. The burden thus shifts back to Sullivan who must prove by a preponderance of the evidence that IKEA's reason is pretextual. Sullivan has failed to do so. The trial court, therefore, did not err in granting summary judgment to IKEA on Sullivan's FMLA violation claim under the retaliation theory.

{¶68} Sullivan's third assignment of error is overruled.

{¶69} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.