OPINION
{¶ 1} Joseph Rainieri appeals from the judgment of the Portage County Court of Common Pleas, which granted appellees' motion for summary judgment on Rainieri's gender discrimination claim. We affrim.
 {¶ 2} The evidence, viewed in the light most favorable to Rainieri, establishes that Rainieri was a third shift certified mechanic at Land O' Lakes' Kent, Ohio facility. On the night of April 13, 2002, Rainieri and Christina Habick were working together and Habick told Rainieri she was upset because she had to work that night. Habick related that she had been at a concert with her boyfriend that evening and had wanted to have sex with her boyfriend but could not, because she had to work.
 {¶ 3} Rainieri answered a maintenance call and when he returned to the maintenance office Habick was using the computer. Habick then showed Rainieri a web site that featured naked male bodybuilders. Habick made several explicit references to the size of the bodybuilder's genitals. Rainieri felt uncomfortable and aroused and left the area. Habick then pursued Rainieri into the maintenance shop and asked if he was upset about what she had showed him and if he was going to tell management. Rainieri said he did not think it was a good idea to view the images but agreed he would not tell anyone.
 {¶ 4} Habick, knowing Rainieri lifted weights, asked if he would pose for her. Rainieri agreed to do so and the two went to an upstairs area. Rainieri then removed his shirt and proceeded to pose for Habick. Habick commented on how good Rainieri looked and touched Rainieri's naked back. Rainieri then put his shirt back on and as he tucked his shirt into his pants, accidentally exposed himself to Habick.
 {¶ 5} Shortly after, Habick, Rainieri, and Penny Scott (Rainieri's girlfriend who also worked at Land O' Lakes) took a work break and ate together. Habick displayed no signs of being upset or afraid. Habick, Rainieri, and Scott walked to the parking lot together at the end of their shift.
 {¶ 6} Approximately a week later while on vacation, Rainieri received a telephone message from Susan Smith, Land O' Lakes's human resource manager. Smith stated she was calling about a very serious matter that could result in Rainieri's termination. Rainieri called Land O' Lakes and spoke to Dan Cornelius who told Rainieri he was suspended from work. Cornelius told Rainieri to come to the office on April 22, 2002 for a meeting.
 {¶ 7} At that meeting, Rainieri met with the plant manager, Karen Darwin and Cornelius who provided Rainieri some details and explained that Habick had accused Rainieri of sexual harassment. Rainieri denied doing anything improper. He said he had found Habick looking at pictures of naked men on the internet and that Habick had commented on the size of the men's genitals. Rainieri said he left the room because he was uncomfortable and he was aware that viewing such images on the computer was grounds for termination.
 {¶ 8} Darwin and Smith conducted an investigation of the alleged incident. Not surprisingly, Habick's description of the events of that night differed substantially from Rainieri's. Habick claimed she was looking for a calendar from "Flex Magazine" because she was interested in purchasing one. When she typed in her search she was surprised that a picture of a naked man appeared on the computer. Habick showed Rainieri the picture because she thought such web sites were inaccessible from the work computer. Habick admitted she made a comment about the size of the man's penis but then stopped viewing the pictures. According to Habick, later that evening, Rainieri offered to flex for her. Habick initially declined this offer but after Rainieri continued to insist, she reluctantly agreed. Habick and Rainieri then went upstairs to look for bearings for a machine. While there, Rainieri started unbuttoning his shirt and again said he wanted to flex for Habick. Habick then started to walk away but Rainieri called to her, unbuttoned his pants, and exposed himself to her while making vulgar comments. Habick tried to leave but Rainieri caught her, grabbed her, and pulled her close to him. Habick then demanded to be released and said what Rainieri had done was sexual harassment.
 {¶ 9} Habick reported the events as she described them to Cornelius, who in turn, reported them to Darwin. Darwin and Smith conducted an investigation. During this investigation, Darwin and Smith interviewed Rainieri and nine other witnesses. The investigation revealed two other women who claimed to have been sexually harassed by Rainieri and Habick claimed to have been harassed by Rainieri on two prior occasions. Habick had reported one of these incidents to Cornelius but told him she wanted to handle it herself.
 {¶ 10} On April 26, 2002, Darwin and Cornelius again met with Rainieri. They reviewed the results of the investigation including the allegations of sexual harassment made by the other women. Rainieri continued to deny any wrongdoing. He also complained that Darwin had not interviewed two witnesses he had requested she interview and that Darwin had refused to take a statement from Peggy Scott. Rainier was fired at the end of the meeting.
 {¶ 11} Subsequently, Rainieri filed the instant action against Land O' Lakes, et al. Rainieri alleged claims of gender discrimination, promissory estoppel, breach of contract, defamation, and violation of public policy. Appellees moved for summary judgment. Rainieri filed a brief in opposition. Before the trial court ruled on appellees' motion, Rainieri voluntarily dismissed his claims for promissory estoppel, breach of contract, and violation of public policy. The trial court granted appellees' motion for summary judgment with respect to Rainieri's claims of gender discrimination and defamation.
 {¶ 12} Rainieri timely appealed the trial court's judgment. On appeal, Rainieri challenges only the trial court's grant of summary judgment with respect to his gender discrimination claim and raise the following assignment of error:
 {¶ 13} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN GRANTING DEFENDANT-APPELLEES' MOTION FOR SUMMARY JUDGMENT."
 {¶ 14} We review a grant of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, i.e., we review the trial court's judgment independently and without deference to its determination. Lexford Prop. Mgmt.,L.L.C. v. Lexford Prop. Mgmt., Inc., 147 Ohio App.3d 312,2001-Ohio-4363, ¶ 10.
 {¶ 15} Summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. Harless v. Willis Day Warehousing, Inc.
(1978), 54 Ohio St.2d 64, 66.
 {¶ 16} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293.
 {¶ 17} If the moving party has satisfied this initial burden, the nonmoving party has a reciprocal burden under Civ.R. 56(E) to set forth facts showing there is a genuine issue for trial. Id. at 293.
 {¶ 18} As with a claim of racial discrimination, a plaintiff in a gender discrimination case must initially make a prima facie case. A plaintiff may do this by presenting direct evidence of discrimination, i.e., "evidence which, if believed, proves the existence of improper discrimination animus without inference or presumption," Shepard v. Griffin Services, Inc., 2nd Dist. No. 19032, 2002-Ohio-2283, ¶ 18, quoting Williams v. United DairyFarmers (S.D. Ohio 1998), 20 F.Supp.2d 1193, 1198. Alternatively, the plaintiff may present circumstantial evidence, i.e., evidence that "creates a presumption that some illegitimate factor, such as * * * gender, played a role in an employer's decision making process." Id. at ¶ 20, citing Williams, supra. Rainieri supports his claim with circumstantial evidence. Thus, we apply the burden shifting analysis first articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green
(1973), 411 U.S. 792.
 {¶ 19} Under the McDonnell Douglas Corp., analysis, in order to establish a prima facie case, the plaintiff must (1) demonstrate he or she is a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; (4) and that a similarly situated, non-protected person was treated more favorably. McDonnellDouglas Corp. (1973), 411 U.S. at 802. If the plaintiff meets this initial burden, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason why the two persons were treated differently. Id. at 802. If the employer meets this burden, the burden then shifts back to the plaintiff and he or she must prove the alleged nondiscriminatory reason was mere pretext. Id. at 804.
 {¶ 20} In the instant case, there is no argument that Rainieri met the first three prongs of the McDonnell DouglasCorp., test. However, in granting appellees' motion for summary judgment, the trial court found Rainieri failed to meet the fourth prong of the test, i.e., he failed to demonstrate Land O' Lakes treated a similarly situated, non-protected person more favorably.
 {¶ 21} In Mitchell v. Toledo Hospital (C.A. 6, 1991),964 F.2d 577, the court set forth the standard to determine whether two employees are "similarly situated." The court stated:
 {¶ 22} "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of a [non-protected employee's], the plaintiff must show that the `comparables' are similarly-situated in all respects. Thus, to be deemed `similarly situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subjected to the same standards, and have engaged in the same conduct without such differing or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Citations omitted.) Id. at 583. See, also, Ercegovich v. Goodyear Tire Rubber Co. (C.A. 6, 1998), 154 F.3d 344, 352; Poppy v. Willoughby Hills CityCouncil, 11th Dist. No. 2004-L-015, 2005-Ohio-2071, ¶ 39.
 {¶ 23} Here, Rainieri argues he is similarly situated to Habick in that her conduct toward him constituted sexual harassment and he was fired, while she only received a verbal reprimand for "inadvertently" viewing improper matter on the company computer. We agree with the trial court and conclude Rainieri has failed to demonstrate he was similarly situated to Habick (or any other Land O' Lakes employee.) Even viewing the evidence in the light most favorable to Rainieri, appellees presented evidence Rainieri had committed past acts of sexual harassment against Habick and two other female employees.
 {¶ 24} Rainieri failed to present evidence sufficient to create a genuine issue of material fact to establish Habick had engaged in sexually harassing conduct prior to the incident giving rise to the instant case. In contrast, appellees presented evidence Rainieri had sexually harassed Habick on two previous occasions, one of which she reported to her supervisor, Dan Corneilus, and had sexually harassed two other employees.[1]
 {¶ 25} Further, appellees presented evidence Habick had reported to management a prior incident of misconduct by Rainieri. When management asked Habick how she wanted the situation handled, Habick chose to discuss it with Rainieri. Appellees presented evidence Habick told Rainieri his behavior toward her was inappropriate and she wanted it to stop. Thus, unlike Habick, Rainieri was on notice there was some problem with his conduct.
 {¶ 26} Rainieri has failed to establish Land O' Lakes treated a similarly situated non-protected employee more favorably and thus, has failed to establish a prima facie case under McDonnellDouglas Corp. See, Giles v. Norman Noble, Inc. (C.A. 6, 2004), 2004 U.S. App. LEXIS 3641, 10-12, finding no similarity between employee fired for allegedly exposing himself to female co-workers and one who viewed sexually explicit material on a work computer.
 {¶ 27} Because Rainieri has failed to establish his prima facie case, we need not address whether he presented evidence to establish a material fact as to whether Land O' Lakes proffered reason for his termination was mere pretext.
 {¶ 28} For the foregoing reasons, appellant's sole assignment of error is without merit, and the judgment of the Portage County Court of Common Pleas is affirmed.
Ford, P.J., concurs,
O'Toole, J., dissents.
[1] Rainieri did present evidence that Habick had engaged in sexually explicit talk while at work; however, there is no evidence anyone ever viewed her conduct as harassment.