[Cite as *Johnson v. Cincy Automall, Inc.*, 2024-Ohio-5749.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| SANDRA JOHNSON, | : | |
| Appellant, | : | CASE NO. CA2024-02-033 |
| | : | O P I N I O N<br>12/9/2024 |
| - vs - | : | |
| | : | |
| CINCY AUTOMALL, INC., | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2022 05 0806

Tobias, Torchia & Simon, and David G. Torchia, for appellant.

Roetzel & Andress, LPA, and Nicholas J. Ziepfel, Brian W. Fox and Thomas B. Allen, for appellee.

**M. POWELL, J.**

{¶ 1} Sandra Johnson appeals from the trial court's decision granting summary judgment to Cincy Automall, Inc. on her claims for wrongful discharge in violation of public policy and sex discrimination. For the reasons set forth below, we reverse these two

grants of summary judgment and remand the two claims for further proceedings.

## I. Factual and Procedural Background

{¶ 2}   Johnson was hired by Cincy Automall and its owner-president, Mustapha Ait Mouha, in July 2020 to create and manage a Business Development Center ("BDC") at Cincy Automall and two other car dealerships that Mouha owned.  Johnson's title was Business Development Manager, and her primary responsibility was to increase sales leads for the three dealerships.  She was also responsible for implementing a new software system as well as administering Cincy Automall's Facebook page.

{¶ 3}   Johnson's compensation agreement included a weekly salary plus monthly bonuses based on the number of sales leads and "shows" that she and her staff developed.  However, Johnson was never paid any bonuses during her employment with Cincy Automall, while male sales employees, whose compensation agreements also allowed them to earn bonuses, did receive their bonuses.  According to Johnson, Mouha told her that he could not afford to pay her bonuses.

{¶ 4}   Johnson was hired during the COVID pandemic.  She did not think that Cincy Automall was following COVID safety protocols carefully enough, like by providing enough personal protective equipment and hand sanitizer for employees.  Johnson alleges that Cincy Automall also failed to warn employees that other employees had tested positive for the virus.  She says that Mouha refused to allow her to work from home and would not pay employees who were home sick with COVID.  Johnson complained to Cincy Automall about all this.  In early December 2020, Cincy Automall changed Johnson's work location to a previously unused space at the dealership.  She learned that a dead mouse had been found in the space and daily saw mice feces on the tops of several desks.  Johnson complained, but Mouha refused to hire an exterminator to address the rodent problem.

{¶ 5}   Having gotten nowhere with her internal complaints, on December 15, 2020, Johnson filed a complaint with the Occupational Safety and Health Administration ("OSHA") regarding Cincy Automall's failure to follow COVID protocols and failure to address the presence of mice in her workplace.  In particular, she alleged that Cincy Automall was not enforcing COVID state and federal guidelines, that employees were not required to wear masks when they were near coworkers and customers, that employees were allowed to come to work when they had symptoms of COVID, that Cincy Automall did not provide hand sanitizer and that often there was not soap and paper towels in the restrooms, that Cincy Automall failed to notify employees when there was a COVID case, that it threatened to fire employees for taking time off to get a COVID test or to quarantine if they were exposed to someone who has COVID or tested positive themselves, and that there was a mouse infestation in the building and Cincy Automall refused to hire an exterminator.

{¶ 6}   The day after she filed the OSHA complaint, Johnson's access to Cincy Automall's computer systems was revoked and she was notified by Facebook that she had been removed as the administrator.  Johnson claims that Cincy Automall then fired her on December 21, 2020.  But Cincy Automall says that she voluntarily resigned after it transferred her to an administrative assistant position.  Johnson filed a statement with OSHA that she had been fired after filing her OSHA complaint.  OSHA notified Johnson in March 2022 that it had completed its investigation of her complaint against Cincy Automall and had determined that the evidence did not demonstrate that she had been fired for filing her complaint or engaging in protected activity.

{¶ 7}   In May 2022, Johnson filed suit against Cincy Automall asserting claims for sexual harassment, sex discrimination, retaliation, wrongful discharge in violation of public policy, and breach of contract.  Cincy Automall moved for summary judgment, and

in February 2024, the trial court granted summary judgment to Cincy Automall on all Johnson's claims except her claim for breach of contract.

{¶ 8}   Johnson appealed.

## II. Analysis

{¶ 9}   Johnson presents two assignments of error challenging the grant of summary judgment on her claims for wrongful discharge in violation of public policy and sex discrimination.  We apply de novo review to such a decision, a standard that requires us to examine the record anew, unencumbered by the conclusions drawn by the trial court.  *Sullivan v. Ikea*, 2020-Ohio-6661, ¶ 18 (12th Dist.).  This fresh look ensures that the litigants receive the full measure of appellate scrutiny to which they are entitled.

{¶ 10}  The lynchpin of our inquiry is whether summary judgment is proper in this instance.  Ohio Civil Rule 56(C) provides a clear framework for this determination, giving two conditions that must be satisfied for summary judgment to stand.  First, there must remain no genuine issue of material fact.  And second, when viewing the evidence in the light most favorable to the nonmoving party, reasonable minds must be able to reach only one conclusion: that the moving party is entitled to judgment as a matter of law.  *Byrd v. Smith*, 2006-Ohio-3455, ¶ 10.

## A. Wrongful Discharge in Violation of Public Policy

{¶ 11}  The first assignment of error alleges:

{¶ 12}  THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF THE PUBLIC POLICY OF THE STATE OF OHIO.

{¶ 13}  Ohio has long adhered to the employment-at-will doctrine, which posits that a general or indefinite hiring may be terminated at the will of either party, for any cause— or indeed, for no cause at all.  *Collins v. Rizkana*, 73 Ohio St.3d 65, 67-68, 1995-Ohio-

135. Yet, as with many venerable legal doctrines, exceptions have emerged to temper its potentially harsh application. One such exception to the employment-at-will doctrine is the tort of wrongful discharge in violation of public policy, colloquially known as a *Greeley* claim. *House v. Iacovelli*, 2020-Ohio-435, ¶ 11, citing *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 234 (1990). If an employee is discharged in contravention of a clear public policy, a cause of action for wrongful discharge may exist. *Greeley*; *Painter v. Graley*, 70 Ohio St.3d 377, 1994-Ohio-334. To prevail on such a claim, a plaintiff must establish four elements: clarity, jeopardy, causation, and lack of justification. *Collins* at 70. While the latter two element are factual inquiries for the jury, the first two are questions of law for the court. *Id.*

{¶ 14} The trial court here concluded that Johnson failed to establish a clear public policy as to either COVID or the mice infestation. At issue here, therefore, are the clarity element—whether Johnson has established the existence of a clear public policy—and, to a lesser extent, the jeopardy element—whether dismissing her under circumstances like those in this case would jeopardize the public policy. The public policy must be rooted in the constitutional, statutory, regulatory, or common-law traditions, and must explicitly forbid the discharge of an employee under circumstances akin to those in the plaintiff's case. *Painter* at 382-384. Johnson contends that COVID hazards and a mice infestation are matters of workplace health and safety and that an at-will employee who is fired for filing a complaint with OSHA concerning matters of health and safety in the workplace states a valid claim for wrongful discharge in violation of public policy.

{¶ 15} In *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 1997-Ohio-219, the Ohio Supreme Court recognized a clear public policy prohibiting retaliatory discharge for filing an OSHA complaint. The Court found this policy anchored in Ohio's longstanding commitment to workplace safety and in 29 U.S.C. 660(c) of the Occupational Safety and

Health Act ("OSH Act"), which expressly proscribes such retaliation. This public policy is jeopardized, the Court said, when an employee, acting on a good faith belief in the validity of their complaint, faces retaliation for raising concerns about workplace health and safety. *Kulch* at 155. To allow such retribution would be to invite a chilling effect on the reporting of legitimate safety concerns, thereby undermining the very policy sought to be upheld. *Id.* at 154. The Court's subsequent decision in *Pytlinski v. Brocar Prod., Inc.*, 94 Ohio St.3d 77, 2002-Ohio-66, held that this protection also encompasses internal complaints lodged with an employer. The crux of the matter, the Court said, is not the forum in which the complaint is raised, but the retaliatory action that follows. *Pytlinski* at 80. This principle recognizes that the law's protective reach must extend to those who seek to address safety concerns through internal channels before escalating to external authorities.

{¶ 16} Turning to the case at hand, the evidence before us paints a picture of an employee who, confronted with what she believed were legitimate workplace health and safety concerns, took steps to address her concerns through both internal and external channels. Johnson alleges that she was fired in retaliation for filing a complaint with OSHA regarding COVID hazards and the presence of mice in her workplace. Johnson first brought these matters to the attention of Cincy Automall, citing inadequate COVID protective measures and unsanitary conditions. Only when her concerns went unaddressed did she escalate the matter to OSHA.

{¶ 17} Johnson's wrongful-discharge claim rests on the public policy favoring workplace safety, a policy deeply rooted in Ohio's statutory and constitutional framework. She cited R.C. 4101.11 and 4101.12, along with other state statutes, a federal regulation,

and provisions of the Ohio Constitution.[1]  Most pertinently, though, she invoked the OSH Act's anti-retaliation provision in 29 U.S.C. 660(c).

{¶ 18} In evaluating the clarity of the public policy at issue, we need look no further than the decisions in *Kulch* and *Pytlinski*.  These cases unequivocally recognize that retaliation against an employee who files a complaint with OSHA or her employer concerning unhealthy workplace conditions clearly contravenes Ohio's public policy favoring workplace safety.  Indeed, *Kulch* expressly held that "an at-will employee who is discharged or disciplined for filing a complaint with OSHA concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy."  *Kulch* at 162.  *Kulch* and *Pytlinski* also recognize that dismissing an employee for reporting health matters in good faith to OSHA or her employer would jeopardize the public policy.

{¶ 19} It is crucial to emphasize that the threshold for protection under this public policy is not the ultimate validity of the complaint, but rather the employee's good faith belief in its legitimacy.  As the Ohio Supreme Court observed in *Kulch*, to require otherwise would risk deterring employees from reporting genuine health and safety concerns, which would undermine the policy favoring workplace safety.  *Id.* at 154.  This principle also finds support in federal law surrounding one of the main sources of the public policy, 29 U.S.C. 660(c).

{¶ 20} The OSH Act's anti-retaliation provision, codified at 29 U.S.C. 660(c)(1), casts a wide protective net: "No person shall discharge or in any manner discriminate

---

1. Johnson also cited R.C. 4121.13 (safety and investigative duties of the Administrator of the Bureau of Workers' Compensation); R.C. 4121.17 (duty of the Bureau of Workers' Compensation to investigate petitions concerning unsafe employment or places of employment); and R.C. 4121.48 (occupational safety loan program to reduce employment hazards and promote health and safety of employees); 29 C.F.R. 1910.1000 (air contaminants); and Sections 34 and 35, Article II, of the Ohio Constitution (providing for the welfare of employees and providing for workers' compensation benefits).

against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act . . ." This statutory language is elucidated by federal regulation 29 C.F.R. 1977.9(c), which underscores the importance of protecting good-faith internal complaints:

> [T]he salutary principles of the [OSH] Act would be seriously undermined if employees were discouraged from lodging complaints about occupational safety and health matters with their employers . . . Such complaints to employers, if made in good faith, therefore would be related to the Act, and an employee would be protected against discharge or discrimination caused by a complaint to the employer.

{¶ 21} Federal courts have interpreted these provisions broadly. In *Donovan v. Freeway Constr. Co.*, 551 F.Supp. 869, 877 (D.R.I. 1982), the court noted that the crux of section 660(c)(1) litigation is not the presence or absence of safety violations, but whether the employer's actions were predicated upon the employee's engagement in protected activity:

> The presence or absence of safety violations is not before the Court in an action under § 660(c) (1) of the Act. The crux of § 660(c) (1) litigation is whether the employer's actions against the employee were predicated upon the employee's filing of a complaint or engagement in other protected activity. Had [the employer] been as pure as the driven snow in its maintenance of the work-place, and had it nevertheless fired complainants for urging OSHA to investigate, the instant action would still lie, so long as the complainants had acted (as they palpably did in this case) in good faith. *Marshall v. N.L. Industries, Inc.*, 618 F.2d 1220 (7th Cir.1980).

This interpretation aligns with Ohio Supreme Court case law, emphasizing the primacy of the employee's good faith in lodging complaints. Similarly, the district court in *Wetherhold v. RadioShack Corp.*, 339 F.Supp.2d 670, 680-681 (E.D.Pa. 2004), held that complaints made in good faith to the employer are protected under the OSH Act. And in *Marshall v. Springville Poultry Farm, Inc.*, 445 F.Supp. 2, 3 (M.D.Pa. 1977), the court stated that "the only requirement for a complaint under § 660(c)(1) is that it be 'under or related' to the

[OSH] Act." *Accord Donovan v. Commercial Sewing, Inc.*, 1982 U.S. Dist. LEXIS 18471, *5-8 (D.Conn. Jan. 27, 1982) (finding *Springville Poultry* "persuasive and explicitly adopt[ing] both its reasoning and result").

{¶ 22} In the case before us, the evidence suggests that Johnson's complaints were made in good faith based on her belief that COVID hazards and the mice infestation were legitimate health concerns. Her actions in first approaching her employer and subsequently filing an OSHA complaint are consistent with the behavior of an employee genuinely concerned about workplace safety.

{¶ 23} This is why the trial court's reliance on our decision in *Dudley v. Siler Excavation Servs., LLC*, 2023-Ohio-666 (12th Dist.), to conclude that COVID hazards do not implicate workplace safety concerns, was misplaced. While we held in *Dudley* that in the context of COVID "citations to *Pytlinski* and *Kulch*, along with other OSHA provisions and regulations are insufficient to meet the burden of articulating a clear public policy specific to workplace safety," *Dudley* at ¶ 23, the case is distinguishable. In *Dudley*, we characterized COVID hazards as "hazards of daily life" rather than "occupational risks." However, the circumstances surrounding the plaintiff's discharge in that case were fundamentally different from those here. The *Dudley* plaintiff was not fired for reporting a safety concern, but rather for disagreeing with her employer's COVID-response protocol. Specifically, she advised an infected employee to quarantine for ten days contrary to her employer's order that the employee return to work. *See id.* at ¶ 27 ("[The plaintiff] was not terminated for reporting [the employee]'s illness, but upon her disagreement with her employer's COVID-19 response."). We determined that such circumstances did not implicate the public-policy exceptions to the employment-at-will doctrine codified in federal statutes like 29 U.S.C. 660(c).

{¶ 24} The case before us presents a markedly different scenario. Johnson

alleges she was fired in retaliation for voicing complaints about Cincy Automall's COVID protocols. This distinction is crucial. While the *Dudley* plaintiff's discharge stemmed from a disagreement over protocol implementation, Johnson's claim arises from the very act of reporting perceived safety violations. This places her squarely within the protective ambit of 29 U.S.C. 660(c)'s prohibition against employers firing employees who file complaints about workplace safety. The law recognizes the importance of safeguarding employees who raise safety concerns. Thus, our acknowledgment in *Dudley* that COVID risks generally do not pertain to workplace safety is not pertinent to our analysis in this case. As previously mentioned, the public policy based on 29 U.S.C. 660(c) hinges not on the presence or absence of actual workplace safety violations, but rather on whether the employee engaged in protected activity by making a good-faith report of perceived workplace safety concerns. To apply *Dudley*'s holding to the present case would be to ignore the fundamental differences between safety protocol disagreements and the reporting of potential safety violations. Such an application would undermine the very purpose of the public policy favoring workplace safety.

{¶ 25} In sum, Johnson's *Greeley* claim against Cincy Automall rests on a foundation of clear public policy, buttressed by specific statutory provisions and unambiguous precedent. Of course, to prevail on her claim, Johnson must prove not only the clarity and jeopardy elements but also the other two elements of the claim—that filing the complaint(s) was the cause of her discharge and that Cincy Automall lacked justification for discharging her.

{¶ 26} We note that Cincy Automall presents arguments addressing these other two elements of the wrongful-discharge claim, arguing that summary judgment is also warranted because Johnson cannot establish the causation or justification element. But these arguments were not raised in Cincy Automall's initial summary-judgment motion,

nor were they addressed by the trial court in its decision. Our review is limited to the issues addressed by the trial court.

{¶ 27} An appellate court's role, though conducted under a de novo standard of review in summary-judgment cases, is not to supplant the trial court's function. As the Ohio Supreme Court has said, Civil Rule 56(C) "mandates that the trial court make the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an 'independent' review of an appellate court." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 1992-Ohio-95 (noting that "de novo review still entails a review of what the trial court decided"). Consequently, appellate courts have generally refrained from addressing issues not decided by the trial court. *See, e.g., Starner v. Onda*, 2023-Ohio-1955, ¶ 57 (10th Dist.); *McFarland v. Niekamp, Weisensell, Mutersbaugh & Mastrantonio, LLP*, 2017-Ohio-8394, ¶ 31, 38 (9th Dist.).

{¶ 28} In the case at hand, while we acknowledge that Johnson also has presented arguments on the other elements of her wrongful-discharge claim, we are bound by the scope of the trial court's ruling. The trial court confined its analysis to a specific element, and it is not the province of this court to expand that analysis sua sponte. Therefore, we decline to consider Cincy Automall's alternative arguments regarding the causation and justification elements.[2] To do so would be to overstep our role as an appellate court and to deprive the trial court of its rightful function in the judicial process.

{¶ 29} We hold that the trial court erred in granting summary judgment to Cincy Automall on Johnson's claim for wrongful discharge in violation of public policy. Cincy Automall has failed to demonstrate that it is entitled to judgment on the claim, so the claim

---

2. Johnson filed a motion asking this court to take judicial notice of documents showing that Cincy Automall contacted an exterminator right after she filed her OSHA complaint. She contends that these documents demonstrate that Cincy Automall was aware of her OSHA complaint before it fired her. Because this matter concerns the causation element, Johnson's motion is overruled.

must be otherwise addressed.

**{¶ 30}** The first assignment of error is sustained.

## B. Sex Discrimination

**{¶ 31}** The second assignment of error alleges:

**{¶ 32}** THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S SEX DISCRIMINATION CLAIM.

**{¶ 33}** We now turn to Johnson's second assignment of error, which contends that the trial court erred in granting summary judgment to Cincy Automall on her sex-discrimination claim. At its core, this claim alleges that Cincy Automall engaged in discriminatory practices by denying her bonuses to which she was entitled, while male employees received theirs. This allegation strikes at the heart of R.C. 4112.02(A), which proscribes discrimination based on sex "with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." The breadth of this statutory language casts a wide net over many forms of workplace discrimination.

**{¶ 34}** The Ohio Supreme Court has long recognized that federal case law interpreting Title VII, the federal anti-discrimination statute, serves as a lodestar for discrimination claims brought under Ohio law. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Com.*, 66 Ohio St.2d 192, 196 (1981) (stating that "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112"). This approach not only promotes consistency in the application of anti-discrimination laws but also allows Ohio courts to draw on the rich tapestry of federal jurisprudence in this area.

**{¶ 35}** The crux of a sex-discrimination claim lies in proving intentional discrimination. In a "disparate treatment" case, like the one before us, the plaintiff bears

the burden of demonstrating both differences in treatment and a discriminatory motive on the part of the employer. Structuring this inquiry is the analytical framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-802 (1973). Under this framework, Johnson must first establish a prima facie case of disparate treatment. This requires her to demonstrate four elements: (1) her membership in a protected class (in this case, as a female); (2) the occurrence of an adverse employment action (the denial of bonuses); (3) her qualification for the position (and by extension, entitlement to the bonus payments); and (4) more favorable treatment of similarly-situated employees outside the protected class (male employees receiving their entitled bonuses). *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-583 (6th Cir. 1992). Should Johnson successfully establish this prima facie case, the burden then shifts to Cincy Automall to articulate a legitimate, nondiscriminatory reason for the disparate treatment. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-256 (1981). If Cincy Automall meets this burden, the onus then returns to Johnson to demonstrate that the proffered legitimate, nondiscriminatory basis is, in fact, merely a pretext masking the true discriminatory intent. *See McDonnell Douglas* at 802.

{¶ 36} To carry her burden in opposing summary judgment, Johnson "'need only produce enough evidence to support a *prima facie* case and to rebut, but not to disprove, the defendant's proffered rationale.'" (Emphasis sic.) *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012), quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007). In the case at hand, the fulcrum on which the dispute pivots is the fourth element of the prima facie case—whether the male employees that Johnson points to are similarly-situated.

{¶ 37} As a preliminary matter, in examining the trial court's grant of summary judgment, we are compelled to address a fundamental mischaracterization that led the

- 13 -

court's analysis astray. The court erroneously framed Johnson's sex-discrimination claim as one of general pay disparity, saying, "Johnson's claim centers around her allegation that she was paid less than men for the same work." But the true nature of Johnson's allegation is far more specific and pointed: she was denied payment of bonuses that were paid to her male counterparts. This distinction is not merely semantic; it is crucial to the proper application of the law to the facts at hand.

{¶ 38} The inquiry in this case, where the alleged discrimination relates to bonus payments, is straightforward: were male employees to whom Johnson compares herself—those who were paid the bonuses to which they were entitled under their compensation agreements—similarly situated to Johnson, who was denied hers? This question cuts to the heart of the "similarly situated" analysis, which requires us to determine whether the male comparators were similar "in all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

{¶ 39} It is imperative to note that there is no rigid, predetermined list of factors that must be considered in making this determination. As the Sixth Circuit aptly noted, a court must make an "independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee" based on the facts of the case. *Tennial v. UPS*, 840 F.3d 292, 304 (6th Cir. 2016). This aligns with the Ohio Supreme Court's case law on this issue, which recognizes that "what is relevant depends on the case." *Kroh v. Continental Gen. Tire*, 92 Ohio St.3d 30, 32, 2001-Ohio-59, citing *Ercegovich* at 353.

{¶ 40} The trial court incorrectly applied the "similarly situated" analysis by relying on factors cited in *Rainieri v. Land O'Lakes, Inc.*, 2006-Ohio-1791, ¶ 22 (11th Dist.). These factors, originally from *Mitchell v. Toledo Hosp.*, 964 F.2d at 583, were not appropriate for this case. Both *Rainieri* and *Mitchell* dealt with cases of employee

misconduct leading to discipline, a context fundamentally different from this one. In the present case, the minutiae of duties, job titles, or the particulars of bonus structures are of little consequence. What matters is the simple fact of entitlement to a bonus and payment—or lack thereof.

{¶ 41} Turning to the summary-judgment evidence, we must be mindful of the bifurcated burden of proof. Here, Cincy Automall, as the moving party, bears the initial burden to demonstrate the absence of a genuine issue of material fact by pointing to evidence that affirmatively demonstrates Johnson cannot prove her case. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. Only if this initial burden is met does Johnson, the nonmoving party, shoulder the reciprocal burden to set forth specific facts showing that an issue of fact remains for trial.

{¶ 42} Upon review, we conclude that Cincy Automall has failed to satisfy its initial burden. To support its motion for summary judgment, Cincy Automall relied on conclusory assertions that Johnson has no evidence to prove that she was treated differently than similarly situated male employees.[3] Such assertions do not affirmatively demonstrate anything. Cincy Automall needed to point to evidence that, for example, the men were not entitled to payment or were not paid. This failure to discharge its initial

---

3. ¶ {a} In its summary-judgment motion, Cincy Automall stated: "With regard to element four, Plaintiff fails to present evidence that she was treated differently from a member outside her protected class. Plaintiff baselessly alleges that she was not paid a bonus for certain referrals and people coming to the dealership ("shows"), but that male employees were paid for "shows." Plaintiff's unsupported and self-serving assertions, presented with *no* evidence or pay stubs to support her contention that she was to be paid any bonuses, is not sufficient to demonstrate a material issue of fact. . . To the contrary, Plaintiff had been an administrative assistant for quite some time." (Emphasis sic.).

¶ {b} Cincy Automall reiterated this argument in its appellate brief: "Here, Appellant, who (at least at one point in time) was tasked to manage the BDC, offers no evidence to demonstrate that she was similarly situated to salespersons, general managers, or any other job classifications at [Cincy Automall]. This is Appellant's burden of proof. Appellant presented the trial court with no evidence tending to show that she and the sales personnel were similarly situated. Appellant's unsupported and self-serving assertions, presented with *no* evidence tending to support those assertions, objectively fails to demonstrate a material issue of fact." (Emphasis sic.).

burden is fatal to Cincy Automall's motion for summary judgment on the sex-discrimination claim.

{¶ 43} Cincy Automall argues that Johnson cannot be similarly situated to male employees because she managed the Business Development Center while they worked in sales. But this misapprehends the nature of the similarly situated analysis. The question is not whether employees share identical job duties across the board in the abstract, but whether they are similarly situated in the specific context that forms the basis of the discrimination claim. *See Ercegovich*, 154 F.3d at 352 (courts must determine "the relevancy of a particular aspect of the plaintiff's employment status"). Here, Johnson alleges discrimination in the payment of contractually-promised bonuses. The relevant comparison, therefore, is whether male employees who were contractually entitled to bonus payments received them while Johnson did not. Cincy Automall offers no explanation for why the difference between management and sales positions matters for purposes of honoring contractual bonus obligations. In the absence of evidence demonstrating the relevance of this distinction to bonus payment practices, Cincy Automall has failed to meet its initial burden on summary judgment to show that no genuine issue of material fact exists regarding whether Johnson was similarly situated to male employees who received their bonuses.

{¶ 44} We note that the evidence in the record, far from supporting Cincy Automall's contention, suggests that the men were indeed similarly situated to Johnson in the relevant respects. Johnson's compensation agreement, her complaint, her deposition testimony, and Cincy Automall's answers to interrogatories collectively indicate that Johnson and the men were entitled to bonus payments, that the men were paid, and that women (with one exception) were not paid.

{¶ 45} It is crucial to emphasize that at this stage of the proceedings, the ultimate

burden of persuasion has not yet shifted to Johnson. While she retains the ultimate burden of persuading the trier of fact that Cincy Automall intentionally discriminated against her, *see Burdine*, 450 U.S. at 253, that burden is not yet operative in the context of summary judgment.

**{¶ 46}** In sum, the trial court's grant of summary judgment was predicated on a mischaracterization of Johnson's claim and a misapplication of the burden of proof in summary-judgment proceedings.[4] These errors, compounded by the failure of Cincy Automall to meet its initial evidentiary burden, necessitate a reversal of the summary judgment on the sex-discrimination claim. This claim, too, must be addressed on its merits.

**{¶ 47}** The second assignment of error is sustained.

### III. Conclusion

**{¶ 48}** For the foregoing reasons, we reverse the trial court's grant of summary judgment on Johnson's claims for wrongful discharge in violation of public policy and sex discrimination. This case is remanded for further proceedings consistent with this opinion.

S. POWELL, P.J., concurs

BYRNE, J., concurs in part and dissents in part.

**BYRNE, J. concurring in part and dissenting in part.**

**{¶ 49}** I concur with and fully join the majority's analysis regarding Johnson's first assignment of error, which concerns Johnson's wrongful discharge in violation of public policy claim.

---

4. The trial court variously said: "It was Johnson's burden of production to direct the Court to the relevant evidence, and her failure to do so is to her detriment"; "the Court agrees with [Cincy Automall]'s argument that Johnson has not demonstrated that she is similarly situated to the sales personnel"; and "Johnson has not demonstrated, within the bounds of admissible Civ. R. 56(C) evidence that she was subjected to treatment different from similarly-situated individuals based upon her gender."

{¶ 50} With respect to Johnson's second assignment of error, which concerns Johnson's claim of discrimination with regard to compensation, I dissent for the reasons stated below.

**Summary Judgment Analysis for Sex Discrimination Claims**

{¶ 51} The *McDonnell-Douglas* burden-shifting framework applicable to Title VII claims applies to Ohio state claims of sex discrimination when there is no direct evidence of discrimination, as the parties agree is the case here.[5] *See Santiago v. Meyer Tool Inc.*, 2023 U.S. App. LEXIS 14469, *10 (6th Cir. June 8, 2023); *Woods v. FacilitySource LLC*, 2015 U.S. Dist. LEXIS 6188, *14 (S.D. Ohio Jan. 20, 2015). Pursuant to the *McDonnell-Douglas* burden-shifting framework "a plaintiff may establish a prima facie case of . . . discrimination by demonstrating: (1) that [s]he is a member of a . . . protected class, (2) that [s]he suffered an adverse employment action or that [her] employment was terminated, (3) that [s]he was qualified for the position, and (4) that similarly-situated nonprotected employees were treated differently." *English v. AK Steel Corp.*, 2016-Ohio-5287, ¶ 17 (12th Dist.), citing *Stallworth v. Wal-Mart Stores E., L.P.*, 2016-Ohio-2620, ¶ 26 (1st Dist.). *Accord Woods* at *14-15; *Mustard v. Timothy J. O'Reilly Co. Ltd.*, 2004-Ohio-425, ¶ 24 (12th Dist.); *Veal v. Upreach L.L.C.*, 2011-Ohio-5406, ¶ 21 (10th Dist.).

{¶ 52} "If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision." *Woods* at *15. If the employer meets that burden, "[t]he plaintiff then bears the burden of demonstrating that the proffered reason was in fact a pretext

---

5. The emphasis here is on "direct" evidence of discrimination with regard to the alleged unlawful discriminatory act. While Johnson has made allegations concerning alleged discriminatory statements and actions, none of Johnson's allegations involve evidence *directly*—that is, on their face—linking sex discrimination to Cincy Automall's refusal to pay Johnson the bonuses she claims were owed to her. Johnson's factual allegations instead involve *indirect* evidence of sex discrimination with respect to non-payment of her bonuses.

designed to conceal unlawful discrimination." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014), citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc).

**Focus of Johnson's Sex Discrimination Claim**

{¶ 53} What, exactly, was the focus of Johnson's sex discrimination claim? This must be clarified, because the focus of the claim affects how *McDonnell-Douglas* analysis should be applied in this case.

{¶ 54} Johnson's amended complaint provides scant information about the focus of her sex discrimination claim. The amended complaint merely states, "[Cincy Automall] discriminated against [Johnson] in the terms and conditions of her employment because of her sex in violation of [R.C.] 4112.02 (A) as enforced through [R.C.] 4112.99." Johnson provided no additional information beyond this broad allegation.

{¶ 55} In its motion for summary judgment, Cincy Automall described Johnson's sex discrimination claim as a "disparate treatment claim." In arguing that Johnson failed to provide evidence establishing the second element of the prima facie case (that is, the "adverse employment action" element), Cincy Automall referred only to Johnson's decision not to accept a new position offered to her by Cincy Automall. The company stated, "In other words, she has not presented evidence that she was terminated from her position because of her gender, to the contrary, she was never terminated at all." Cincy Automall did not refer to anything else in discussing the second element of the prima facie case. This includes failing to refer to Johnson's allegations regarding non-payment of the bonus she alleges she was owed.

{¶ 56} In her response to Cincy Automall's motion for summary judgment, Johnson—like Cincy Automall—limited her discussion of the second element of her prima facie case to the issue of whether she was terminated, arguing that she chose not to

accept a demotion that would have resulted in a pay cut. Johnson did not mention her allegations regarding non-payment of bonuses.

{¶ 57} The trial court, in granting summary judgment to Cincy Automall on her sex discrimination claim, acknowledged Cincy Automall's argument that Johnson failed to provide evidence establishing both the second and fourth elements of her prima facie case. But the trial court concluded, "It is on the latter, fourth element that Johnson's claim fails." By implication, the trial court seems to have found that Johnson satisfied the second element of her prima facie case.

{¶ 58} The trial court, unlike the parties, focused not on the circumstances surrounding Johnson's alleged termination, but on "her allegation that she was paid less than men for the same work." The court then quoted Johnson's testimony about how, when Ait Mouha asked her to review pay documents, she determined that Cincy Automall had adopted two separate pay scales for male and female sales employees:

> So there was a plan A and a plan B. And then he was asking me to help the sales, the floor Managers tell each person which one they were on, and I said I'm not going to have any part of that, because you're paying these ladies way less than you're paying these men with the same, you know, experience—or there were some guys that made more because they had experience and had been there, which I understood, but the people who were brand new, he made the ladies train and get paid less for weeks way before he actually allowed them to make money.
>
> And then, you know, from what I was told, he didn't want to pay out their bonuses either. I don't know, I can't tell you that he actually did or not. I'm just telling you what the ladies were saying to me, that they weren't paid.
>
> But I don't have any—I didn't see their paycheck or anything like that, so I don't know. But I did actually proofread the plan A and plan B where there was distinct different rates of pay.

The court noted that the "plan A" and "plan B" documents were not in the record and concluded that their contents were therefore hearsay. The court then found that Johnson

had not demonstrated that she was similarly situated to the sales employees subject to "plan A" and "plan B," but was rather the manager of the Business Development Center. The court also found that, even if "plan A" and "plan B" did demonstrate that Cincy Automall paid male and female sales employees differently, "those claims would be for others to raise, and Johnson has not provided any authority for the Court to grant judgment in her favor based upon discrimination committed upon others." For these reasons the court granted summary judgment to Cincy Automall on Johnson's sex discrimination claim. The court did not make any reference to Johnson's allegations regarding non-payment of bonuses she was owed.

{¶ 59} On appeal, Johnson shifted the focus of her sex discrimination claim. She referenced the trial court's characterization of her sex discrimination claim as focusing on the difference between the "plan A" and "plan B" compensation plans, but then stated that her claim was instead "simply that while [Cincy Automall] paid men for the bonuses they earned, it refused to do the same for her." She then referenced testimony that she argued supported this claim.

{¶ 60} In its appellate brief, Cincy Automall accepted Johnson's characterization of her pay plan as focusing not on the difference between "plan A" and "plan B," but instead on her allegation "that similarly situated employees were paid bonuses and she was not." Cincy Automall then argued that the court should grant it summary judgment on this claim because Johnson failed to provide evidence establishing the fourth element of her prima facie case—that is, she failed to show that "similarly situated men" were paid bonuses when she was not.

{¶ 61} As detailed above, the focus of Johnson's sex discrimination claim shifted from the amended complaint, to the summary judgment motion practice, to the trial court's decision, and to the parties' appellate briefs. But now, on appeal, the parties agree that

the sex discrimination claim concerns only one issue: alleged non-payment of bonuses Johnson believes were owed to her. I will examine the fourth element of the prima facie case in light of that understanding.

## Analysis of Fourth Element of Prima Facie Case

{¶ 62} In discussing the fourth element of the prima facie case in its motion for summary judgment, Cincy Automall argued that Johnson "fails to present evidence that she was treated differently from a member outside her protected class." Cincy Automall then states that Johnson "baselessly alleges that she was not paid a bonus for certain referrals and people coming to the dealership ['shows'], but that male employees were paid for 'shows.'" Cincy Automall argued that this was an unsupported and self-serving assertion presented without any evidence or pay stubs in support, and therefore there was no "material issue of fact" with respect to Johnson's sex discrimination claim.

{¶ 63} In her response, Johnson pointed to evidence that male sales employees were paid bonuses and commissions they were owed, and pointed to specific men she identified in discovery.[6] She admitted that one female sales employee, Sara Chavez Mendina, was paid a bonus, but she argued that Mendina was only paid this bonus after completing training that male sales employees were not required to complete, that she was paid less than the men, and that her bonus payment was delayed. Johnson also pointed to evidence regarding Ait Mouha's "discriminatory attitude toward females," including her allegations that he objectified attractive women, rewarded women who performed sexual favors, adopted different pay plans for men and women, required women to complete more training than men, and told Johnson that women did not know

---

6. As noted above, Johnson only discussed this issue with regard to the fourth element of her prima facie case, not the second element. It is unclear why. But we need not answer this question, as the parties on appeal agree that the sex discrimination claim concerns the bonus payment issue.

anything about cars.

**{¶ 64}** Johnson makes similar arguments on appeal, and Cincy Automall again argues on appeal that Johnson failed to identify similarly situated males who were treated differently than her.

**{¶ 65}** I pause to emphasize that Johnson's claim is that she was owed bonuses under a pay plan that was unique to her, that she did not receive those bonuses, and that Cincy Automall, through Ait Mouha, acknowledged that he owed the bonus payments to her and yet refused to pay them. She alleges he did so because she was a woman. In other words, her claim is *not* that her bonus plan was itself discriminatory when compared to other male employees' bonus plans.[7]

**{¶ 66}** In analyzing whether Johnson has produced evidence to support the fourth element of her prima facie case of compensation-related sex discrimination, the majority focuses on the question of whether Johnson has produced evidence regarding whether "similarly-situated nonprotected employees were treated differently." *English*, 2016-Ohio-5287 at ¶ 17. I agree, and up to this point my analysis does not diverge significantly from the majority's analysis. But I disagree with the details of the majority's analysis of the "similarly-situated" element of the prima facie case in two respects.

**{¶ 67}** First, I disagree with the majority's analysis regarding what is "relevant" for purposes of the similarly-situated analysis. The majority notes that the United States Court of Appeals for the Sixth Circuit has stated that in conducting the "similarly-situated"

---

7. In other words, Johnson's sex discrimination claim is not an *equal pay* claim—sometimes called a wage discrimination or pay discrimination claim—but is instead a *sex discrimination* claim that, as a factual matter, relates to Cincy Automall's alleged failure to pay certain compensation (bonuses) that Johnson alleges were owed to her. Johnson only alleges that Cincy Automall has discriminated against her in failing to pay bonuses, not in the terms of her bonus plan. There is therefore no need to examine equal pay statutes such as the federal Equal Pay Act (29 U.S.C. 206[d][1], et seq.), its Ohio equivalent (R.C. 4111.17[A]), or the case law regarding whether or not the standard for proving an equal pay claim applies when a claim that specifically involves equal pay issues is brought under R.C. 4112.02(A) and 4112.99.

analysis, courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). In determining what aspects of Johnson's employment are relevant for a similarly-situated analysis, the majority simply states that "the minutiae of duties, job titles, or the particulars of bonus structures are of little consequence," and concludes that "What matters is the simple fact of entitlement to a bonus and payment—or lack thereof." But the "minutiae" are exactly what the court is required to review when conducting a similarly-situated analysis.

{¶ 68} The majority essentially adopts Johnson's argument that what matters for purposes of the "similarly-situated" analysis in this case is the simple fact that Johnson was not paid a bonus, while the male sales employees she identifies as similarly situated were paid bonuses. But this court (and a trial court) may not simply accept a plaintiff's characterization of what is or is not relevant for purposes of a similarly-situated analysis. *Ercegovich* at 352 (a trial court must conduct independent analysis regarding relevancy). Speaking generally, the simple fact that some employees are entitled to a bonus and a plaintiff is not paid a bonus, by itself, does not establish that those employees are similarly situated to the plaintiff. Is it the same bonus? For doing the same work? Who decides who gets paid the bonus? Do the employees have the same bonus plan? Did the plaintiff and the other employees differ in their compliance with the terms of the bonus plan? At least some commonality must be established—the same or a similar job, the same pay plan, the same supervisor, etc. *Hardy v. The Andersons, Inc.*, 2022-Ohio-3357, ¶ 40-41 (6th Dist.); *Mittler v. OhioHealth Corp.*, 2013-Ohio-1634, ¶ 36 (10th Dist.); *Lindsay v. Children's Hosp. Med. Ctr. of Akron*, 2009-Ohio-1216, ¶ 38 (9th Dist.). The entire point of a similarly-situated comparator rule is to ensure that apples are compared to apples,

not oranges.

**{¶ 69}** Johnson has not pointed to any evidence that would allow a court to conclude that the male sales employees whom she identifies as similarly situated were, in fact, similarly situated. She must be able to point to such evidence in the record to avoid summary judgment. *English*, 2016-Ohio-5287 at ¶ 17 ("a *plaintiff* may establish a prima facie case of racial discrimination by demonstrating" that, among other elements, similarly-situated employees were treated differently) (Emphasis added.). But here, it is undisputed that the male employees to whom Johnson points were sales employees, while Johnson was not a sales employee. Instead, Johnson was hired as the head of Cincy Automall's Business Development Center, and thus was tasked with leading a team in the development of sales leads. This is an entirely different job function from that of sales employees whose job was to sell cars directly to customers. Nor has Johnson pointed to evidence suggesting that the male sales employees to whom she points had the same (or even a similar) bonus plan as her bonus plan. On the contrary, it is undisputed that they had a different bonus plan than Johnson's. In these circumstances, this court cannot conclude that the male sales employees identified by Johnson are similarly situated to her, and the trial court did not err in reaching this same conclusion.

**{¶ 70}** Second, I disagree with the majority's departure from the requirements of the *McDonnell-Douglas* burden-shifting framework in ¶ 42 of its opinion. In that paragraph, the majority states, "Cincy Automall relied on conclusory assertions that Johnson has no evidence to prove that she was treated differently than similarly situated male employees. Such assertions do not affirmatively demonstrate anything." (Footnote omitted.) But the *McDonnell-Douglas* prima facie case analysis asks, precisely, whether the *plaintiff* can point to evidence demonstrating that the plaintiff was treated differently from similarly-situated employees. *English* at ¶ 17. The absence of such evidence is

therefore fatal to a plaintiff's prima facie case of discrimination. *Mustard*, 2004-Ohio-425, ¶ 38 (12th Dist.); *Howard v. Contech Constr. Prods., Inc.*, 2003-Ohio-6547, ¶ 33-34 (12th Dist.); *Baker v. The Buschman Co.*, 127 Ohio App.3d 561, 566-567 (12th Dist. 1998); *Snyder v. Orange Bd. of Educ.*, 2019-Ohio-3774, ¶ 32 (8th Dist.); *Steadman v. Sterilite Corp.*, 2010-Ohio-3391, ¶ 71-72 (5th Dist.); *DeGarmo v. Worthington City Schools Bd. of Edn.*, 2013-Ohio-2518, ¶ 13-14 (10th Dist.). Next, the majority states that "Cincy Automall needed to point to evidence that, for example, the men were not entitled to payment or were not paid." In making this statement, the majority seems to imply that a court faced with a summary judgment motion must assume that employees identified as similarly situated by a plaintiff are in fact similarly situated, and that the burden is on the employer (the moving party) to *disprove* that the employees are similarly situated. I am aware of no case law supporting the majority's view of what *McDonnell Douglas* requires.

{¶ 71} My conclusion that Johnson has failed to establish a prima facie case of sex discrimination should not be interpreted as suggesting that certain potentially discriminatory statements made by Ait Mouha are in any way acceptable. But as explained above, the parties agree that Johnson's sex discrimination claim only concerns Cincy Automall's non-payment of bonuses that she believes were owed to her. With respect to that narrow claim, Johnson cannot establish a prima facie case because she has failed to identify similarly-situated male employees who were treated differently than her. It would not be appropriate for this court to comb the deposition testimony and construct a different sex discrimination claim for Johnson, one that she did not herself make below or on appeal.[8]

---

8. We note that the trial court denied Automall's request for summary judgment on Johnson's breach of contract claim. That claim concerned the denial of her bonuses. Thus, Johnson still has an avenue for potential recovery of these claimed bonuses, outside of the confines of a sex discrimination claim, at trial.

{¶ 72} For these reasons, I disagree with the majority's conclusion that the trial court erred in granting summary judgment to Cincy Automall with respect to Johnson's sex discrimination claim. I would therefore overrule Johnson's second assignment of error and affirm the trial court's decision awarding summary judgment to Cincy Automall with respect to that claim.

{¶ 73} I respectfully concur in part and dissent in part.